STATE OF NEBRASKA, APPELLEE, V. JAMES OLDFIELD, APPELLANT.
461 N.W.2d 554

Filed October 26, 1990.   No. 89-842.

434

Kirk E. Naylor, Jr., for appellant.

Robert M. Spire, Attorney General, and Kenneth W. Payne for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

In the district court for Seward County, as the result of a bench trial after waiver of a jury, James Oldfield was convicted of three felonies charged in the information, namely, count I, possession of cocaine, see Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1988); count II, carrying a concealed weapon, see Neb. Rev. Stat. § 28-1202 (Reissue 1989); and count III, possession with intent to distribute, deliver, or dispense

methamphetamine, a controlled substance, see § 28-416(1)(a). The district court sentenced Oldfield to concurrent terms of imprisonment for the convictions.

Oldfield has appealed and claims that the trial court erred in (1) failing to dismiss the charges against Oldfield, since his "constitutional and statutory right to a speedy trial" was violated, and (2) finding the evidence sufficient to convict Oldfield on count III, possession of methamphetamine with intent to distribute, deliver, or dispense that controlled substance.

We affirm the district court's judgment.

Based on information supplied to a dispatcher for the Nebraska State Patrol, Trooper Robert Roberts was directed on February 8, 1988, to an area on U.S. Highway 6 near Milford, Nebraska, to locate a dark-colored automobile which had a broken windshield and bore Kansas vehicle plates. Sources had reported that the vehicle in question was being driven erratically and was weaving from shoulder to shoulder on the highway. When Roberts saw a vehicle which matched the description from the dispatcher and which was parked on the shoulder of Highway 6, he stopped his patrol car, got out, approached the other car, and eventually requested and obtained the occupant's license to operate a motor vehicle. From the information on the license, Roberts learned that the driver's name was James Oldfield, and returned to his patrol car to radio for any additional information on Oldfield.

Investigator Raymond Smee, an undercover Nebraska State Patrol drug investigator for 5 years, was monitoring the radio transmission from Roberts' patrol car and recognized Oldfield's name. By radio, Smee informed Roberts that Oldfield was a known drug user. When he returned to Oldfield's car and the left front or driver's door was opened, Roberts immediately observed a hypodermic syringe on the car's floor between the front seat and the driver's door.

About that time, Smee arrived at the scene and informed Roberts that he knew Oldfield as a result of undercover investigations, and knew that Oldfield was a drug user who administered amphetamines and cocaine with syringes. Roberts and Smee then removed Oldfield from his vehicle as two other

officers arrived at the scene. One of these officers observed an expended .45-caliber shell on the front floorboard at the passenger's side of Oldfield's car and also saw several bullet holes in the car's windshield. On account of these observations, Roberts "patted down" Oldfield to determine if he was armed and found that Oldfield was wearing an empty shoulder holster. Roberts then searched the driver's side of Oldfield's car for the presence of weapons and found a loaded .45-caliber semiautomatic pistol wedged behind the vehicle's center console. Oldfield was arrested for carrying a concealed weapon.

Oldfield's vehicle was towed to and impounded at the Seward County Jail, where Roberts and Smee later undertook an inventory of the car's contents. During the inventory the officers found three more hypodermic syringes; a pair of hemostats; two pipes which, according to Roberts' later testimony, were commonly used for smoking marijuana; a spoon; a gun case which held a bottle of clear liquid, razor blades, and Q-tips; and a locked plastic box. The spoon and two of the syringes contained cocaine residue, according to a laboratory analysis performed after the inventory.

On February 9, 1988, pursuant to a search warrant, the officers opened the locked box found in Oldfield's car and discovered a grinding kit consisting of a small scale, a grinder, screens, a funnel, two vials, metal scoops, and two plastic bags containing a white-yellow powder. Through a chemical analysis of the two bags of powder, the bags' contents were identified as 22.46 grams of methamphetamine.

On April 18, 1988, the State filed its information and charged Oldfield with the three felonies heretofore mentioned. A jury trial was set for August 22. Oldfield filed a motion on August 8 to suppress the physical evidence obtained from his automobile. After Oldfield's suppression motion had been scheduled for hearing on August 26, the State requested, and received, a postponement until October 11 because Smee, the undercover officer, was unavailable for the suppression hearing. At the October 11 hearing on the suppression motion, the State presented evidence reflecting the events recounted above concerning Roberts' contact with Oldfield and his

automobile. At the conclusion of evidence in the suppression hearing, the court took Oldfield's motion under advisement until January 10, 1989, when the court overruled the suppression motion and scheduled Oldfield's case for a jury trial to commence on March 13. On March 2, however, pursuant to Oldfield's waiver of a jury trial, the court notified counsel that the bench trial in Oldfield's case would commence on March 22.

On March 20, the State filed a motion to endorse its information with the name of Trooper Larry Wollenburg, who was instrumental in obtaining the search warrant for Oldfield's automobile. In his objection filed on March 22, the date set for trial, Oldfield resisted the endorsement of Wollenburg's name on the information and, through his lawyer, requested that "this matter be continued." Also on March 22, Oldfield filed his separate "Motion to Dismiss," claiming that he was entitled to an "Order dismissing this matter, for the reason that the Defendant is entitled to a total discharge of the offense charged in accordance with Neb. Rev. Stat. 29-1208 for the reason that the Defendant has not been brought to trial within six months from the filing of the information." That same day, March 22, the court overruled Oldfield's objection to the State's endorsement of Wollenburg's name on the information and continued the proceedings until March 28, the date for Oldfield's bench trial. When Oldfield appeared with his lawyer for the trial on March 28, a pretrial discussion involved the possibility of Oldfield's waiving his motion for dismissal if he proceeded to trial without the court's ruling on the motion. However, after the court concluded and ruled that there was "no waiver on behalf of the defendant of his statutory right to a six-month trial," the bench trial commenced. At the conclusion of evidence in Oldfield's trial, the court took the matter under advisement pending disposition of Oldfield's dismissal motion based on deprivation of the statutory right to a speedy trial. The court held a hearing on April 17 concerning the speedy trial motion, which was then taken under advisement. On May 12, the court overruled Oldfield's speedy trial motion, convicted Oldfield of the three felonies charged, and later, on July 17, sentenced Oldfield to concurrent terms of imprisonment for the

convictions.

Oldfield's first assignment of error refers in part to a defendant's right to a speedy trial, guaranteed by both U.S. Const. amends. VI and XIV, see *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), and Neb. Const. art. I, § 11, see, *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985), and *State v. Brown*, 214 Neb. 665, 335 N.W.2d 542 (1983). In *State v. Vrtiska*, 225 Neb. 454, 458-59, 406 N.W.2d 114, 119 (1987), we stated:

> As we recently noted in *State v. Lafler, ante* p. 362, 405 N.W.2d 576 (1987), the constitutional right to a speedy trial, guaranteed by Neb. Const. art. I, § 11, and U.S. Const. amends. VI and XIV, is distinct from the provision for a speedy trial prescribed by the Nebraska speedy trial act, Neb. Rev. Stat. §§ 29-1207 to 29-1209 (Reissue 1985). As pointed out in *Lafler*, protection in the form of a statutory right may not necessarily be coextensive with the protection afforded under a constitution, state or federal, notwithstanding that such statutory and constitutional provisions may, generally, relate to the same subject.

Oldfield claimed entitlement to dismissal on the ground that he had not been brought to trial within the 6-month period prescribed by Neb. Rev. Stat. §§ 29-1207 et seq. (Reissue 1989). In his dismissal motion, Oldfield did not allege that he had been denied the constitutional right to a speedy trial; hence, the constitutional question concerning a speedy trial was not raised in the trial court.

In the absence of plain error, when an issue is raised for the first time in an appellate court, the issue will be disregarded inasmuch as a trial court cannot commit error regarding an issue never presented and submitted for disposition in the trial court. See *State v. Fletcher*, 221 Neb. 562, 378 N.W.2d 859 (1985) (failure to raise, at the trial level, a question concerning an allegedly unreasonable search preserved no question for appellate review regarding the search). Cf. *State v. Vrtiska, supra* (a defendant's failure at the trial level to raise a question about a statutory notice requirement for execution of a search warrant precluded consideration of the statutory aspects of the search warrant, although constitutional requirements for a

search warrant, raised as issues in the trial court, were proper subjects for appellate review). Generally, a constitutional question not properly raised in the trial court will not be considered on appeal. *State v. Fleming*, 223 Neb. 169, 388 N.W.2d 497 (1986); *State v. Mercer*, 217 Neb. 164, 347 N.W.2d 868 (1984).

Since Oldfield, in the district court, did not raise the question of his constitutional right to a speedy trial, we will not consider a constitutional speedy trial question in this appeal.

However, Oldfield contends that his statutory right to a speedy trial, that is, a trial within 6 months from the date the information is filed, has been violated. Section 29-1207 provides in relevant part:

> (1) Every person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section.

> (2) Such six-month period shall commence to run from the date the indictment is returned or the information filed. . . .

> . . . .

> (4) The following periods shall be excluded in computing the time for trial:

> (a) The period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . the time from filing until final disposition of pretrial motions of the defendant, including motions to suppress evidence . . .

> (b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel. . . .

> (c) The period of delay resulting from a continuance granted at the request of the prosecuting attorney, if:

> (i) The continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at the later date . . . .

Further, § 29-1208 states that "[i]f a defendant is not brought to

trial before the running of the time for trial, as extended by excluded periods, he shall be entitled to his absolute discharge from the offense charged and for any other offense required by law to be joined with that offense."

To ascertain whether the State has complied with the 6-month requirement prescribed by §§ 29-1207 et seq. concerning commencement of a criminal defendant's trial, the method to determine the last day for trial in the absence of excludable time was set forth in *State v. Jones*, 208 Neb. 641, 305 N.W.2d 355 (1981). Section 29-1207 (Reissue 1989) is the same as § 29-1207 (Reissue 1979) construed in *State v. Jones, supra*. First, in *Jones* the court rejected a computation based on a 30-day month whereby the last day for trial is determined by use of six 30-day months, or 180 days. Next, the *Jones* court expressed the method to determine a "month" for the purpose of the "6-month" requirement for a speedy trial pursuant to § 29-1207:

> [U]nless the context shows otherwise, the word "month" has been legislatively defined to mean calendar month. [Citations omitted.] . . . [W]e have construed "calendar month" as being a period terminating with the day of the succeeding month, numerically corresponding to the day of its beginning, less one. *Brown v. City of Omaha*, 179 Neb. 224, 137 N.W.2d 814 (1965).

208 Neb. at 644, 305 N.W.2d at 358.

Since the information in *Jones* was filed on July 3, 1979, the last day for commencement of Jones' trial was January 3, 1980. However, as the result of excluding 20 days of delay attributable to Jones, that is, 16 days pertaining to disposition of suppression motions and 4 days for a continuance granted at Jones' request, 20 days were added to the date of January 3, 1980, so that the final day for commencement of Jones' trial was extended to January 23, 1980. Because Jones' trial commenced on January 21, 1980, he was brought to trial within the 6-month period specified in the Nebraska speedy trial act. See *Jones, supra*.

In several decisions after *Jones*, this court has reaffirmed the *Jones* method for determining the 6-month period and excludable time under Nebraska's speedy trial act. See, *State v.*

*Williams*, 211 Neb. 650, 319 N.W.2d 748 (1982); *State v. Brown*, 214 Neb. 665, 335 N.W.2d 542 (1983); *State v. Fatica*, 214 Neb. 776, 336 N.W.2d 101 (1983); *State v. Kriegler*, 225 Neb. 486, 406 N.W.2d 137 (1987); *State v. Vrtiska*, 227 Neb. 600, 418 N.W.2d 758 (1988).

Because the information against Oldfield was filed on April 18, 1988, by excluding the filing date of the information and using the "move forward 6 months, but then back up 1 day" rule expressed in *Jones*, the last day for commencement of Oldfield's trial was October 18, 1988, in the absence of excludable time authorized under § 29-1207(4)(a) which extends the period for commencement of a defendant's trial pursuant to Nebraska's speedy trial act. See, *Vrtiska, supra*; *Kriegler, supra*; *Fatica, supra*; *Brown, supra*; *Williams, supra*.

"The primary burden is on the State to see that an accused is brought to trial within the time prescribed by the Nebraska speedy trial act. [Citations omitted.] To avoid a defendant's absolute discharge from an offense charged, as dictated by § 29-1208, the State, by a preponderance of evidence, must prove existence of a period of time which is authorized by § 29-1207(4) to be excluded in computing the time for commencement of the defendant's trial in accordance with the Nebraska speedy trial act, or '6-month rule.' [Citations omitted.]"

*State v. Vrtiska, supra* at 604, 418 N.W.2d at 761 (quoting from *State v. Lafler*, 225 Neb. 362, 405 N.W.2d 576 (1987)). Since Oldfield's trial started on March 28, 1989, the State must show excludable time pursuant to § 29-1207(4) to extend the permissible date for trial beyond October 18, 1988.

Oldfield did not, and does not, contest the legitimacy of the continuance granted to the State. Since the court granted a continuance at the prosecuting attorney's request on account of unavailability of evidence material to the State's case, namely, testimony of the undercover officer, Smee, regarding the suppression question raised by Oldfield, that period is not charged against the State in computing the time within which Oldfield's trial must have commenced. See § 29-1207(4)(c)(i).

Under § 29-1207(4)(a), a defendant must accept reasonable delay as a consequence of the defendant's pretrial motion. *State*

*v. Craig,* 219 Neb. 70, 361 N.W.2d 206 (1985); *State v. Fatica, supra; State v. Brown, supra.* Oldfield does not assert that the time involved in the trial court's disposition of the suppression motion was an inordinate delay. Cf. *State v. Wilcox,* 224 Neb. 138, 395 N.W.2d 772 (1986) (suppression motion under advisement for more than 1 year 3 months 23 days constituted unreasonable and inordinate delay in bringing defendant to trial under the 6-month requirement of § 29-1207).

Therefore, under § 29-1207(4)(a) the entire period attributable to disposition of Oldfield's suppression motion is excluded in computing the time within which the State was required to commence Oldfield's trial pursuant to § 29-1207. That excludable period commenced on August 9, 1988, the day after Oldfield filed his suppression motion, and ended on January 10, 1989, when the court overruled the motion. The period of August 9, 1988, to January 10, 1989, inclusive, consists of 155 aggregate days excluded in determining the last day for commencement of Oldfield's trial. The 155-day exclusion is calculated by adding the excluded days to the last day of the 6-month period initially determined for § 29-1207(2) in accordance with the computational rule expressed in *State v. Jones,* 208 Neb. 641, 305 N.W.2d 355 (1981). Since October 18, 1988, was the last day of the initially determined 6-month period within which the State was required to commence Oldfield's trial, but trial was not commenced on that date, the first day of the excludable 155 days is October 18, 1988. When the remaining 154 days of the excludable period are added to October 18, 1988, the last excluded day is March 21, 1989. Because the entire period commencing on October 18, 1988, and concluding on March 21, 1989, is excluded, March 22, 1989, was the last day for commencement of Oldfield's trial pursuant to § 29-1207(2) of Nebraska's speedy trial act. On that last day for commencement of trial, namely, on March 22, 1989, Oldfield requested, and immediately received, a postponement of his trial until March 28. The 6-day delay resulting from Oldfield's requested continuance is excluded in computing the time for commencement of trial. See, § 29-1207(4)(b); *State v. Jones, supra.*

Although in some of our decisions it appears that the day on

which a defendant filed a pretrial motion is counted within the exclusionary period under § 29-1207(4)(a), for example, *State v. Lafler, supra*, and *State v. Fatica, supra*, nevertheless, as we have reaffirmed and expressed today, an excludable period under § 29-1207(4)(a) commences on the day immediately after the filing of a defendant's pretrial motion.

Consequently, in view of the excluded periods in computing the time for commencement of Oldfield's trial, Oldfield was brought to trial within the 6-month period prescribed by § 29-1207(2); hence, Oldfield's first assignment of error is without merit.

Oldfield's second assignment of error is that the evidence is insufficient to establish possession of methamphetamine with his intent to distribute, deliver, or dispense that controlled substance. Regarding this assignment of error, Oldfield states:

> Appellant does not dispute that the evidence adduced at trial is sufficient to establish, beyond a reasonable doubt, that appellant did *possess* methamphetamine on the date alleged in the information. The presence of methamphetamine and drug paraphernalia in a vehicle within the sole control of appellant was clearly sufficient to prove appellant's possession.

(Emphasis in original.) Brief for appellant at 17.

> "In determining whether evidence is sufficient to sustain a conviction in a bench trial, the Supreme Court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. A conviction in a bench trial of a criminal case is sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that conviction."

*State v. Blue Bird*, 232 Neb. 336, 339, 440 N.W.2d 474, 476 (1989) (quoting from *State v. Vejvoda*, 231 Neb. 668, 438 N.W.2d 461 (1989)). In a bench trial of a criminal case, the trial court's findings have the effect of a verdict and will not be set aside unless clearly erroneous. *State v. Wood*, 220 Neb. 388, 370 N.W.2d 133 (1985); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985).

The officers in the present case found, among other things, razor blades, a small scale, a grinding kit, and 22.46 grams of methamphetamine in Oldfield's automobile and, therefore, in his possession under the circumstances. Investigator Smee, trained in identifying controlled substances and their packaging and methods of distribution, had worked as an undercover officer for 5 years and made several purchases of controlled substances in conjunction with undercover operations. Smee testified that the razor blades may be used for chopping methamphetamine into smaller particles and that scales of the type found in Oldfield's car are used to weigh controlled substances. As an item not commonly found in possession of drug users, a grinding kit is used to transform a controlled substance, such as methamphetamine, into a powder. The quantity of methamphetamine found in Oldfield's possession is several times the amount normally possessed by a user, or, as Smee explained: "[A] user will normally buy smaller amounts. On methamphetamine they work mainly in quarter, half grams, maybe a gram, up to about [3.5 grams] . . . . Anything over that then they're starting to get into the redistribution of the substance." Smee estimated the value of the methamphetamine found in Oldfield's automobile at approximately $1,200 to $1,500.

The foregoing are circumstances from which intent to distribute methamphetamine may be inferred.

"A defendant may be convicted by circumstantial evidence which establishes the defendant's guilt beyond a reasonable doubt. The State is required to establish the defendant's guilt for the crime charged, but is not required to disprove every hypothesis consistent with the defendant's presumed innocence." *State v. Blue Bird*, 232 Neb. 336, 339, 440 N.W.2d 474, 476 (1989); *State v. Loveless*, 234 Neb. 463, 451 N.W.2d 692 (1990). "When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence." *State v. Hoffman*, 227 Neb. 131, 141, 416 N.W.2d 231, 237 (1987); *State v. Blue Bird, supra*.

In *State v. Turner*, 192 Neb. 397, 399, 222 N.W.2d 105, 106

(1974), this court stated:

> Circumstantial evidence to establish that possession of a controlled substance was with intent to distribute or deliver may consist of the quantity of the substance, the equipment and supplies found with it; the place it was found; the manner of packaging; and the testimony of witnesses experienced and knowledgeable in the field.

See, also, *State v. Eary*, 235 Neb. 254, 261, 454 N.W.2d 685, 691 (1990): " 'Possession of a quantity of a controlled substance in a form customarily used for delivery or distribution will support an inference of possession with intent to deliver or distribute' " (quoting from *State v. Salas*, 231 Neb. 471, 436 N.W.2d 547 (1989)); *State v. Britt*, 228 Neb. 201, 421 N.W.2d 791 (1988); *State v. Lee*, 227 Neb. 277, 417 N.W.2d 26 (1987).

Based on the quantity of methamphetamine in Oldfield's possession, combined with the articles found with the methamphetamine, including the locked box in which these items were discovered, and the testimony of a witness with specialized knowledge about controlled substances and illicit transactions involving those substances, we cannot conclude the trial court was clearly erroneous in its finding that Oldfield was in possession of methamphetamine with intent to distribute the methamphetamine.

AFFIRMED.