STATE OF NEBRASKA, APPELLEE, V. HAROLD A. ZITTERKOPF, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. STACY ZITTERKOPF, ALSO KNOWN AS STACY BELL, APPELLANT.

463 N.W.2d 616

Filed December 7, 1990.    Nos. 89-1252, 89-1253.

Charles F. Fitzke, Scotts Bluff County Public Defender, and Robert L. Wolf for appellants.

Robert M. Spire, Attorney General, and Denise E. Frost for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Harold A. Zitterkopf and Stacy Zitterkopf, formerly Stacy

Bell, appeal from their convictions and sentences for possession of cocaine, in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 1988), and intending to distribute, deliver, or dispense marijuana which each possessed, in violation of § 28-416(1)(a). After Zitterkopfs were convicted in a consolidated jury trial, see Neb. Rev. Stat. § 29-2002 (Reissue 1989), in which the same counsel represented both Zitterkopfs, the district court sentenced Harold Zitterkopf to concurrent terms of imprisonment, that is, 1 year on the cocaine conviction and 4 to 5 years on the marijuana conviction, with credit for time in custody pending disposition of the charges. The court sentenced Stacy Zitterkopf to concurrent prison terms of 1 year on her cocaine conviction and 2 years on her marijuana conviction, with credit for custodial time.

Stacy Bell, her children, and Harold Zitterkopf lived in a house north of Scottsbluff, Nebraska. Pursuant to a search warrant, law enforcement officers entered the Bell-Zitterkopf residence. After this incident, Stacy Bell married Harold Zitterkopf and in this opinion is designated "Stacy Zitterkopf."

When Detective Robert Kinsey of the Scottsbluff Police Department entered the Zitterkopf residence and announced that he was a police officer with a search warrant, Detective Kinsey observed Stacy Zitterkopf, who was sitting in a living room chair, make a movement toward the end table next to her. On the end table were two straws and a razor blade sitting atop a framed mirror. Investigator Alex Moreno, trained by the Drug Enforcement Administration (DEA) and familiar with controlled substances cases, identified the items on the table as common implements used for "snorting" cocaine. Also on the table were a metal tube, which was later chemically analyzed and found to contain cocaine; cigarette papers; and a radio "scanner" for monitoring police radio communications.

On the floor beside the end table, officers found a sheet designating police radio frequencies and a "10 code" list for interpretation of police radio communications and for deciphering the "code that law enforcement people use for radio transmissions." Zitterkopfs used the scanner to select transmissions "over the police radio" and "listen to the police traffic on the radio." Detective Kinsey, who had received DEA

training and had investigated over 100 cases involving criminal possession and distribution of cocaine and marijuana, testified that one frequency which appeared on the Zitterkopfs' list was a "secured channel" used for confidentiality during police investigations in controlled substances cases. The officers also seized from the floor beside the end table a box of sandwich baggies; a pile of currency totaling $775, mostly in $20 bills; a folded plastic baggie later determined to contain 2.481 grams of cocaine; and a brown glass vial containing a substance later chemically determined to be cocaine. Near the table, officers found two plastic bags which, according to a subsequent chemical analysis, contained a total of 271.2 grams, or approximately 9.56 ounces, of marijuana, a quantity customarily used for repackaging. Marijuana for personal consumption is usually packaged in 1/4-ounce quantities. The last item seized from the Zitterkopfs' living room was an electronic scale, a type "commonly found during narcotic investigations" because it measures to a fraction of an ounce and thus assures drug buyers that they are purchasing a specific quantity of a substance. Although police had seized an electronic and a balance scale from the Zitterkopf residence in February 1989, Harold Zitterkopf replaced the scales within a month.

As the officers moved throughout the Zitterkopf house, they continued to find other items containing quantities of or residue from suspected controlled substances. In a bathroom closet, the officers discovered a spoon with a residue later tested and ascertained to be cocaine. A search of the master bedroom resulted in seizure of a brown glass vial which was used to store, measure, and "snort" cocaine and which contained cocaine residue. The officers also seized from the bedroom a heart-shaped tin container which was filled with plastic bags containing later-identified cocaine residue. Both Harold and Stacy Zitterkopf claimed that Harold owned the plastic bags found in the heart-shaped tin, while Stacy owned the tin itself. Stacy Zitterkopf was aware that Harold used the tin as a container to prevent the Bell children's access to cocaine kept in the tin.

Harold Zitterkopf testified that the $775 found in the living

room was his "spending money" and represented a portion of the wages he earned by working at a sugar factory, as well as money received from the recent sale of three dogs which he had raised. He admitted ownership of the two bags of marijuana found in the living room and claimed that he had received one bag as a gift from a friend and had purchased the other for his "own private use" without intent to sell the marijuana.

Both Stacy and Harold Zitterkopf testified that the electronic scale belonged to Stacy, who was a coin collector and used the scale to identify certain coins; for example, "They manufactured two different dimes in 1982 and the only way you can tell the difference is by weighing them." Stacy Zitterkopf was aware of the two bags of marijuana in the living room, but denied possession of the marijuana.

At the conclusion of all the evidence, Harold Zitterkopf moved for a directed verdict on the marijuana charge, contending there was insufficient evidence to prove his intent to distribute the marijuana. Stacy Zitterkopf made an identical motion regarding the marijuana distribution charge against her, but also requested a directed verdict on the charge that she possessed cocaine and marijuana. The court overruled the motions for directed verdicts.

On appeal, the Zitterkopfs claim the district court erred by overruling their motions for directed verdict and imposing excessive sentences. The defense attorney's multiple representation in defending Harold and Stacy Zitterkopf is not raised as an issue.

### MOTIONS FOR DIRECTED VERDICT

"In a criminal case a court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged, or (2) evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained."

*State v. Pettit*, 233 Neb. 436, 462, 445 N.W.2d 890, 906 (1989) (quoting *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989)). Accord *State v. Lane*, 227 Neb. 687, 419 N.W.2d 666 (1988).

In determining whether evidence is sufficient to sustain a conviction in a jury trial, the Supreme Court does not

resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury, which are within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict.

*State v. Brown*, 225 Neb. 418, 428, 405 N.W.2d 600, 606 (1987). Accord, *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990); *State v. Loveless*, 234 Neb. 463, 451 N.W.2d 692 (1990).

On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.

*State v. Robertson*, 223 Neb. 825, 830, 394 N.W.2d 635, 638 (1986). Accord, *State v. Reynolds, supra*; *State v. Loveless, supra*.

" 'A defendant may be convicted by circumstantial evidence which establishes the defendant's guilt beyond a reasonable doubt. The State is required to establish the defendant's guilt for the crime charged, but is not required to disprove every hypothesis consistent with the defendant's presumed innocence.' " *State v. Oldfield, ante* p. 433, 444, 461 N.W.2d 554, 562 (1990) (quoting *State v. Blue Bird*, 232 Neb. 336, 440 N.W.2d 474 (1989)). Accord *State v. Loveless, supra*.

"Constructive possession of an illegal substance may be proved by direct or circumstantial evidence, and may be shown by the accused's proximity to the substance at the time of arrest or by a showing of dominion over the substance." *State v. Salas*, 231 Neb. 471, 474, 436 N.W.2d 547, 549 (1989).

When the officers entered Stacy Zitterkopf's home to execute the search warrant, she was sitting in a living room chair near which the officers found two bags of marijuana and a folded plastic baggie, a metal tube, and a brown glass vial, all of which contained cocaine. On account of Stacy Zitterkopf's proximity to the cocaine and marijuana, and the other circumstances at the time of the search, we cannot conclude that there is a complete failure of evidence to prove possession

or that the evidence lacked probative value so that a finding of guilt is unsustainable. Therefore, the evidence presented a submissible issue for the jury on the question of Stacy Zitterkopf's possession of cocaine and marijuana; hence, the district court was correct in overruling the motion for a directed verdict on Stacy Zitterkopf's claim that the evidence failed to establish her possession of cocaine and marijuana.

Harold and Stacy Zitterkopf also moved for directed verdicts on the issue of intent to distribute, deliver, or dispense marijuana. " 'When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence.' " *State v. Oldfield, supra* at 444, 461 N.W.2d at 562 (quoting *State v. Hoffman,* 227 Neb. 131, 416 N.W.2d 231 (1987)). Accord *State v. Blue Bird, supra.* Therefore, circumstantial evidence may support a finding that a defendant intended to distribute, deliver, or dispense a controlled substance in the defendant's possession. *State v. Salas, supra; State v. Britt,* 228 Neb. 201, 421 N.W.2d 791 (1988); *State v. Lee,* 227 Neb. 277, 417 N.W.2d 26 (1987).

> "Circumstantial evidence to establish that possession of a controlled substance was with intent to distribute or deliver may consist of the quantity of the substance, the equipment and supplies found with it; the place it was found; the manner of packaging; and the testimony of witnesses experienced and knowledgeable in the field."

*State v. Oldfield, supra* at 445, 461 N.W.2d at 562 (quoting *State v. Turner,* 192 Neb. 397, 222 N.W.2d 105 (1974)). " ' "Possession of a quantity of a controlled substance in a form customarily used for delivery or distribution will support an inference of possession with intent to deliver or distribute." ' " *State v. Oldfield, supra* at 445, 461 N.W.2d at 562 (quoting *State v. Eary,* 235 Neb. 254, 454 N.W.2d 685 (1990)).

As detailed above, at the Zitterkopf residence officers seized a box of plastic sandwich baggies found near two bags of marijuana totaling 9.56 ounces. According to Detective Kinsey, baggies are often used for marijuana distribution because marijuana is usually purchased by the dealer in bulk, then

divided into $1/4$-ounce quantities and placed in smaller plastic baggies for a street sale price of approximately $30. In the vicinity where the marijuana and baggies were found, officers also located a sophisticated electronic scale commonly used in sales of controlled substances.

On account of the quantity of marijuana found at the Zitterkopf residence, the type of marijuana packaging, the equipment and supplies found near the marijuana, and the testimony of officers who are trained and experienced in enforcing the laws regarding controlled substances, the district court properly overruled the motions for directed verdicts on the issue of the Zitterkopfs' intent to distribute the marijuana found in the Zitterkopf residence.

## EXCESSIVE SENTENCES

In Zitterkopfs' second assignments of error, both contend that the district court imposed excessive sentences on them. The Zitterkopfs were prosecuted for violations of § 28-416(3), possession of cocaine, a Class IV felony, and § 28-416(1)(a), possession of marijuana with intent to deliver, a Class III felony. Class IV felonies are punishable by a maximum 5-year term of imprisonment, a $10,000 fine, or both such imprisonment and fine, with no minimum penalty prescribed. Class III felonies carry a maximum punishment of 20 years' imprisonment, a $25,000 fine, or both such imprisonment and fine, with a minimum term of 1 year in prison. Neb. Rev. Stat. § 28-105 (Reissue 1985).

"A sentence imposed within the statutory limits will not be disturbed on appeal unless the sentencing court has abused its discretion in the sentence imposed." *State v. Kitt*, 232 Neb. 237, 240, 440 N.W.2d 234, 236 (1989). Accord *State v. Blue Bird*, 232 Neb. 336, 440 N.W.2d 474 (1989). This court has also said:

> [I]n considering a proper sentence, the trial court is not limited in its discretion to any mathematically applied set of factors. It is necessarily a subjective judgment and includes the observations of the sentencing judge as to the demeanor, attitude, and all facts and circumstances surrounding the life of the defendant.

*State v. Stranghoener*, 208 Neb. 598, 603, 304 N.W.2d 679, 682 (1981). Whether the sentence imposed is probation or

incarceration is a matter within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Brown*, 225 Neb. 418, 405 N.W.2d 600 (1987); *State v. Lane*, 227 Neb. 687, 419 N.W.2d 666 (1988).

We have reviewed the presentence report on each of the Zitterkopfs and the record of the sentence hearing, all in the light of the Zitterkopfs' convictions for violations of the statutes prohibiting criminal conduct related to controlled substances. Since the sentences in the present case are well within the statutory limits for each offense, we cannot state that the sentences imposed are an abuse of discretion.

The convictions and sentences of Stacy Zitterkopf and the convictions and sentences of Harold Zitterkopf are affirmed.

AFFIRMED.