STATE OF NEBRASKA, APPELLEE, V. ROBERT G. LONNECKER, APPELLANT.

465 N.W.2d 737

Filed February 15, 1991.   No. 89-1399.

Glenn A. Shapiro, of Gallup & Schaefer, and, on brief, Thomas M. Kenney, Douglas County Public Defender, and Cheryl M. Kessell for appellant.

Robert M. Spire, Attorney General, and Wynn Clemmer for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

A jury convicted Robert G. Lonnecker of intent to deliver

marijuana which was in his possession, a violation of Neb. Rev. Stat. §§ 28-405(c)(10) [Schedule I] (Reissue 1989) and 28-416(1) (Cum. Supp. 1988), which is a Class III felony under § 28-416(2). Lonnecker claims that inadmissible evidence was used in his conviction, that the evidence is insufficient to sustain his conviction, and that the sentence imposed is excessive.

Pertinent to Lonnecker's case, § 28-416(1) provides that "it shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense [marijuana] . . . ."

## PROOF OF THE CHARGE

Lonnecker and Rick Brau have known each other since 1975 and lived together from 1984 to 1987 in a house identified as 4540 North 65th Avenue in Omaha. In the spring of 1988, Brau occupied the house, but Lonnecker moved into a schoolbus parked at 4510 North 65th Avenue, and on occasion showered and slept at the house where Brau lived. However, on April 12, 1989, Lonnecker delivered $200 to the landlord for the Brau house, and the landlord issued a rent receipt to "Bob Lonniker & Rick" for the period from April 10 to May 10, 1989. Lonnecker's driver's license, which was issued June 22, 1987, and bore an October 16, 1990, expiration date, listed 4540 North 65th Avenue as Lonnecker's current address.

As adduced at trial, an informant contacted Sheriff's Deputy William H. Jackson on April 15, 1989, and stated that marijuana was being cultivated and distributed at the 4540 North 65th Street residence. On April 18, Deputy Jackson obtained a search warrant for "4540 N. 65 Av., Omaha, Douglas County, Nebraska." Deputies executed the search warrant on the evening of April 18.

While securing the grounds around the house, a deputy encountered Brau and detained him outside the dwelling. Other deputies involved in the prospective search of the house were confronted by Brau's "pit bull on a chain by the front door" of the house. The dog chased a deputy involved in the search, but the animal was restrained at "the end of the chain," which prevented the dog's reaching the front door of the house. After

maneuvering around the pit bull, deputies entered the residence as one deputy yelled, "Sheriff's office; we have a search warrant." Deputies then proceeded to search for occupants on the first floor. When they found none on the first floor, the deputies proceeded to the second floor of the house and, arriving at a closed bedroom door which had been barricaded from within, heard someone moving around inside the bedroom. Deputies entered the bedroom, which contained a bed, bedding, and men's clothing and noticed that a wall panel was ajar. After the deputies removed the panel and entered a crawl space, they found Lonnecker hiding in the crawl space between the house's rafters and its ceiling for the first floor.

In the house's basement, deputies discovered that half the basement had been partitioned into two rooms with Styrofoam walls covered with reflective material. In one room, there were mature marijuana plants, while the other room contained marijuana seedlings and small marijuana plants. The basement rooms also contained lamps with automatic timers, fans, plant food, a water hose, a sprayer, 350 to 400 marijuana plants, and cut marijuana leaves drying on a screen.

Deputies then searched the rest of the house, which had two bedrooms, and found "marijuana being dried in every room in the house" and various drug-related items and paraphernalia, including a book entitled "Indoor Marijuana Horticulture," a scale, a magnifying glass, sandwich bags, and a smoking pipe. Also, in the house were several firearms, namely, a .22-caliber rifle, a .22 revolver, and a sawed-off .410 shotgun. Nothing indicated that the weapons belonged to Lonnecker. At trial and over Lonnecker's objection (relevance), a deputy sheriff testified about finding the firearms in the house. During presentation of Lonnecker's case, Brau, who had a serious leg injury, testified that he had some of the firearms to protect himself, since the house had been "broken into." One of the firearms had been given to Brau as a gift.

As the search proceeded, deputies, accompanied by Lonnecker, went to the kitchen. Meanwhile, the pit bull had broken its chain outside, darted into the house, ran to the kitchen, and was about to attack the deputies, who had drawn their weapons to shoot the dog, when Lonnecker yelled: "I will

take care of the dog . . . . Let me take care of the dog." After Lonnecker had calmed the dog, he took the animal outside and chained it to a truck. Over Lonnecker's objection (relevance), a deputy testified about the pit bull event inside the house.

Lonnecker was arrested and subsequently convicted of the controlled substance charge previously mentioned in this opinion.

## EVIDENTIAL QUESTIONS

Lonnecker argues that evidence of the pit bull incident in the kitchen is irrelevant or, if relevant, should have been excluded, since its probative value is substantially outweighed by the danger of unfair prejudice. As Lonnecker characterizes the situation, "the evidence concerning the dog and the weapons had no probative value, and the only thing the State accomplished by adducing the evidence was to cast [Lonnecker] as a vicious person who owned a vicious dog and surrounded himself with loaded weapons." Brief for appellant at 6.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989). Neb. Evid. R. 402 permits the admission of relevant evidence only. *State v. Robertson*, 219 Neb. 782, 366 N.W.2d 429 (1985). To be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving an issue to be decided. *State v. Baltimore*, 236 Neb. 736, 463 N.W.2d 808 (1990); *State v. Robertson, supra*.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989). A ruling pursuant to Neb. Evid. R. 403 for exclusion of relevant evidence will be upheld on appeal unless the ruling is an abuse of discretion. *State v. Baltimore, supra*. In the context of Neb. Evid. R. 403, "unfair prejudice" means an undue tendency to suggest a decision on an

improper basis. *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984).

An issue in Lonnecker's case is his relationship to or association with the house where the marijuana cultivation was located.

The actions of Brau's pit bull outside the house displayed the dog's reaction toward intruders into its territory. When the dog entered the house, Lonnecker's intervention and ability to calm the pit bull as it was about to attack the deputies indicate Lonnecker's established and amicable relationship with the riled dog. Without that relationship through prior contact with the pit bull, it is improbable that Lonnecker would have risked coming between the deputies and the dog and, moreover, highly unlikely that Lonnecker would have been able to handle the dog as he did. The canine episode reflected Lonnecker's tie with a dog which was associated with the premises. In Lonnecker's case, reactions by "man's best friend" tended to provide some information for an answer to the question concerning Lonnecker's presence and connection with the premises. Hence, we are unable to conclude that the pit bull incident lacked a rational relationship as proof to establish Lonnecker's involvement or connection with the premises where deputies found the cultivated marijuana. Also, the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. Hence, there was no abuse of discretion in the trial court's refusal to exclude the evidence in question.

However, we are unable to discern any probative value in the State's evidence concerning the firearms found inside the house. Because the State's firearm evidence lacks probative value, that evidence is irrelevant, see Neb. Evid. R. 401, and, consequently, is inadmissible, see Neb. Evid. R. 402.

"In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt." *State v. Cox*, 231 Neb. 495, 504, 437 N.W.2d 134, 140 (1989). See, also, *State v. Baltimore, supra*; *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988).

Error in admitting the State's firearm evidence was rendered harmless through Brau's acknowledgment that he owned the firearms and his explanation for the presence of the firearms. We conclude that the State's firearm evidence, although erroneously admitted, was, nevertheless, harmless beyond a reasonable doubt.

## SUFFICIENCY OF EVIDENCE

"In determining whether evidence is sufficient to sustain a conviction in a jury trial, the Supreme Court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury, which are within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict."

*State v. Zitterkopf*, 236 Neb. 743, 746-47, 463 N.W.2d 616, 619 (1990). Accord, *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990); *State v. Loveless*, 234 N.W.2d 463, 451 N.W.2d 692 (1990); *State v. Brown*, 225 Neb. 418, 405 N.W.2d 600 (1987).

"On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt."

*State v. Zitterkopf, supra* at 747, 463 N.W.2d at 620. Accord, *State v. Robertson*, 223 Neb. 825, 394 N.W.2d 635 (1986); *State v. Reynolds, supra*; *State v. Loveless, supra*.

Lonnecker recognizes that "[w]hile it is true that a large amount of marijuana was found in the house, the issues are whether Defendant possessed marijuana and, if so, what his intentions were with respect to the marijuana." Brief for appellant at 8. According to Lonnecker,

[t]he record in this case is void of any evidence that Lonnecker possessed marijuana or that he intended to manufacture and/or deliver marijuana. . . .

. . . In this case, the State can point to no conduct of the Defendant, no language of the Defendant, and no

circumstances which linked the Defendant to the business of growing and selling marijuana. All the State can say in this case is that the Defendant was in the house two floors above the area where the marijuana was found.

Brief for appellant at 6-7.

" 'A defendant may be convicted by circumstantial evidence which establishes the defendant's guilt beyond a reasonable doubt. The State is required to establish the defendant's guilt for the crime charged, but is not required to disprove every hypothesis consistent with the defendant's presumed innocence.' " *State v. Oldfield*, 236 Neb. 433, 444, 461 N.W.2d 554, 562 (1990) (quoting *State v. Blue Bird*, 232 Neb. 336, 440 N.W.2d 474 (1989)). Accord *State v. Zitterkopf, supra.*

"When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence." *State v. Hoffman*, 227 Neb. 131, 140, 416 N.W.2d 231, 237 (1987). Accord, *State v. Oldfield, supra*; *State v. Swigart*, 233 Neb. 517, 446 N.W.2d 216 (1989); *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989).

"Circumstantial evidence to establish that possession of a controlled substance was with intent to distribute or deliver may consist of the quantity of the substance, the equipment and supplies found with it; the place it was found; the manner of packaging; and the testimony of witnesses experienced and knowledgeable in the field."

*State v. Oldfield, supra* at 445, 461 N.W.2d at 562 (quoting *State v. Turner*, 192 Neb. 397, 222 N.W.2d 105 (1974)). Accord *State v. Zitterkopf, supra.*

A defendant possesses a controlled substance when the defendant knows of the nature or character of the substance and its presence and has dominion or control over the substance. See, *State v. Coca*, 216 Neb. 76, 341 N.W.2d 606 (1983); *State v. Williams*, 211 Neb. 650, 319 N.W.2d 748 (1982).

A defendant's control or dominion over premises where a controlled substance is located may establish the defendant's constructive possession of the controlled substance. See, *State v. Armendariz*, 234 Neb. 170, 449 N.W.2d 555 (1989); *State v. Bustos*, 230 Neb. 524, 432 N.W.2d 241 (1988); *State v. Britt*, 228

Neb. 201, 421 N.W.2d 791 (1988); *State v. Stickelman*, 207 Neb. 429, 299 N.W.2d 520 (1980).

Without reiterating all the evidence in Lonnecker's case, we note that salient facts include the description of activities on the premises before execution of the search warrant, a quite obviously longstanding and large-scale cultivation of marijuana, the rent receipt issued to Lonnecker and Brau, Lonnecker's address shown on his driver's license, and his use of the premises. From all the circumstances, the jury could infer that Lonnecker rented or controlled the premises where the marijuana was being cultivated.

Also, after deputies identified themselves and shouted their presence inside the house, the deputies discovered Lonnecker, who was hiding in the upstairs crawl space. As this court noted in *State v. Clancy*, 224 Neb. 492, 499, 398 N.W.2d 710, 716 (1987):

> Referring to conduct as evidence of guilt, Wigmore has expressed: "No one doubts that the state of mind which we call 'guilty consciousness' is perhaps the strongest evidence . . . that the person is indeed the guilty doer; nothing but an hallucination or a most extraordinary mistake will otherwise explain its presence." 2 J. Wigmore, Evidence in Trials at Common Law § 273(1) at 115 (J. Chadbourn rev. 1979). "There are two processes or inferences involved—from conduct to consciousness of guilt, and then from consciousness of guilt to the guilty deed." 1A J. Wigmore, *supra* § 173 at 1840.

Although *Clancy* involved evidence of the defendant's attempted intimidation or actual intimidation of a State's informant or witness, evidence which was admissible under Neb. Evid. R. 404(2) ("other acts"), the rationale for "conscious guilt" evidence is equally applicable in Lonnecker's case.

Lonnecker's hiding in the crawl space was evidence of his "conscious guilt" concerning the marijuana located on the premises which were under his control, that is, a conscious guilt concerning possession and cultivation of marijuana as a controlled substance. Cf. *State v. Swigart, supra* at 519, 446 N.W.2d at 219 (arresting officers discovered defendant,

" 'holding a tub of potato salad,' " in a residential bathroom).

After our review of the record in Lonnecker's case, we conclude that the evidence sustains the verdict and Lonnecker's conviction. For that reason, we affirm the judgment on the jury's verdict that Lonnecker was guilty as charged.

## EXCESSIVE SENTENCE

Lonnecker argues that the district court abused its discretion by imposing an excessive sentence, namely, imprisonment for a term of 2 to 4 years. The statutorily authorized penalty for Lonnecker's conviction of a Class III felony is imprisonment for a term of 1 to 20 years, a $25,000 fine, or both such imprisonment and fine. See Neb. Rev. Stat. § 28-105(1) (Reissue 1985).

"A sentence imposed within the statutory limits will not be disturbed on appeal unless the sentencing court has abused its discretion in the sentence imposed." *State v. Kitt*, 232 Neb. 237, 240, 440 N.W.2d 234, 236 (1989). Accord, *State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231 (1987); *State v. Dillon*, 222 Neb. 131, 382 N.W.2d 353 (1986).

Regarding Lonnecker's claim that the sentence imposed is excessive, under the circumstances and in view of all the appropriate information presented in reference to sentencing Lonnecker, the district court did not abuse its discretion in the sentence imposed on Lonnecker. Therefore, the sentence imposed on Lonnecker is affirmed.

AFFIRMED.