IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)


STATE V. REIN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

DESIRAE A. REIN, APPELLANT.


Filed October 30, 2018.    No. A-17-649.


Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Bernard J. Straetker, Scotts Bluff County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.


MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Desirae A. Rein appeals her convictions of possession of 10 to 27 grams of methamphetamine with the intent to distribute, enhanced to a Class IC felony for possession of a firearm; obstructing a peace officer, a Class I misdemeanor; and carrying a concealed weapon, a Class I misdemeanor. She challenges the evidence as insufficient to support her convictions and contends that her misdemeanor sentences are excessive. We find no merit to these arguments and therefore affirm.

## II. STATEMENT OF FACTS

On January 20, 2016, Officer Bryan Martinez stopped a car for having "fictitious plates." Upon determining that there were four people in the car moving around in a suspicious manner, Martinez called for backup. Martinez contacted the driver, George Valles, who was unable to

produce identification, insurance, or other evidence of vehicle ownership. Rein was sitting in the front passenger seat, and two other persons were sitting in the back seat. Martinez asked Valles to step out of the car, but he refused.

After Martinez threatened to remove him, Valles began exiting the car. At that time, Officer James Combs arrived and advised that Valles had a knife in his pocket. Although Martinez told him not to reach for the knife, Valles grabbed the knife, gave it to Martinez, and dove back into the car. Combs moved into position to assist Martinez in removing Valles from the car. While pulling Valles out of the car, Combs observed Rein reach into Valles' waistband, and Combs instructed her to stop. Combs testified that his hand was on Valles' hip, and he felt Rein reach "under [his] hands," and when he moved his hand to the area where Rein had been reaching, he felt a gun in Valles' waistband. Combs testified that he could "feel [Rein] extract that from the hip." After Rein pulled her arm back, Combs saw her hand move under her purse which was located partially on top of the center console and partially on top of the edge of her seat. Combs eventually located a gun in the passenger compartment of the vehicle between the center console and Rein's seat.

After removing Valles from the car, Martinez testified that Combs told him that he had felt a gun on Valles. Officer Matthew Broderick and Investigator Rob Kiesel arrived to assist Combs and removed the other passengers from the car. According to Combs, when Rein exited the car she said "grab my purse, it's in my purse." Broderick searched Rein's purse and found a camera bag with "maybe 50" small bags inside, two of which contained methamphetamine, measuring approximately 14 grams between the two bags.

Combs also located a briefcase under the front passenger seat floorboard beneath where Rein had been sitting. The briefcase contained precious and collectible coins, a digital scale "with a crystalized residue on the scale," and an "asp," which is a collapsible baton similar to the batons used by police. According to Combs, an asp baton can be used for "joint strikes, . . . choke lids (phonetic) . . . comcranial (phonetic) and nerve bundles you are going to hit and you would cause quite a bit of damage."

Rein was charged in the Scotts Bluff County District Court with possessing 10 to 27 grams of methamphetamine with intent to distribute while possessing a firearm, a Class IC felony, in violation of Neb. Rev. Stat. § 28-416(1) and (16) (Cum. Supp. 2015); obstructing a peace officer, a Class I misdemeanor, in violation of Neb. Rev. Stat. § 28-906 (Reissue 2016); and carrying a concealed weapon, a Class I misdemeanor, in violation of Neb. Rev. Stat. § 28-1202 (Reissue 2016). A jury trial was held on April 24, 2017.

Kiesel testified that he was a member of the "WING Drug Task Force," for which he had received special training. He testified that possession of the digital scale, a quantity of small bags, and more than a few grams of methamphetamine were all indications of a methamphetamine dealer. According to his experience and training, the gun and baton were consistent with what a drug dealer would likely carry for self-defense. He also testified that possession of an "eight-ball [3.5 grams of methamphetamine]" is indicative of a "big time distributor." He explained that dealers may even get suspicious if someone wants to buy more than 3.5 grams unless it is clear that the amount was being purchased for resale.

Rein admitted to owning the purse, some of the coins, and to partial ownership of the scale, which she claimed was used to weigh coins. She stated the briefcase belonged to Valles, and it

was in the car because he had taken it to show coins to his father earlier that day. She denied any knowledge of the camera case, methamphetamine, or asp baton.

The jury found Rein guilty of possession of methamphetamine with intent to distribute, enhanced for possession of a firearm; obstructing a police officer; and carrying a concealed weapon. The court sentenced Rein to 5 to 6 years' imprisonment for the enhanced possession of methamphetamine with intent to distribute conviction with credit for 2 days served. The court sentenced her to 0 to 1 year's imprisonment for obstructing a peace officer with no credit for time served. The court also sentenced Rein to 0 to 1 year's imprisonment on her conviction for carrying a concealed weapon with credit for 2 days served. The sentences on the methamphetamine possession and carrying a concealed weapon were ordered to be served concurrently, but ordered to be served consecutively to the sentence imposed for obstructing a peace officer. Rein has timely appealed to this court and is represented by the same counsel as represented her at trial and sentencing.

## III. ASSIGNMENTS OF ERROR

Rein assigns that the evidence presented by the State was insufficient to support her convictions and that the sentence imposed on her in connection with her misdemeanors was excessive, constituting an abuse of discretion.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Casterline*, 293 Neb. 41, 878 N.W.2d 38 (2016). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

Rein contends that the evidence was insufficient to support her convictions. Rein argues "that inconsistent statements by officers regarding critical events and observations made by them during their investigation at this traffic stop would prevent any rational trier of fact from being able to find that these offenses were established beyond a reasonable doubt." Brief for appellant at 15. As we previously stated, in reviewing a criminal conviction for a sufficiency of the evidence claim, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Casterline, supra*. We will review the sufficiency of the evidence in connection with each count in which Rein was convicted.

(a) Enhanced Possession of Methamphetamine
With Intent to Distribute

It is unlawful for any person to knowingly or intentionally possess a controlled substance with the intent to distribute. Neb. Rev. Stat. § 28-416(1) (Cum. Supp. 2015). If the controlled substance is methamphetamine, at least 10 but less than 28 grams, possession is a class ID felony. § 28-416(10). The penalty is enhanced for a "person knowingly or intentionally possessing a firearm while in violation of subsection (1)," and an offense under § 28-416(1) that would be a class ID felony without a firearm becomes a class IC felony. § 28-416(16).

Constructive possession of an illegal substance may be proven by direct or circumstantial evidence and may be shown by the accused's proximity to the substance at the time of arrest or by a showing of dominion over the substance. *State v. Zitterkopf*, 236 Neb. 743, 463 N.W.2d 616 (1990). Circumstantial evidence to establish that possession of a controlled substance was with intent to distribute or deliver may consist of the quantity of the substance, the equipment and supplies found with it; the place it was found; the manner of packaging; and the testimony of witnesses experienced and knowledgeable in the field. *Id*.

In *Zitterkopf*, the court summarized the controlling evidentiary factors that resulted in its refusal to grant a directed verdict for the defendant on a possession with intent to distribute charge.

> On account of the quantity of marijuana found at the Zitterkopf residence, the type of marijuana packaging, the equipment and supplies found near the marijuana, and the testimony of officers who are trained and experienced in enforcing the laws regarding controlled substances, the district court properly overruled the motions for directed verdicts on the issue of the Zitterkopfs' intent to distribute.

*Id*., 236 Neb. at 749, 463 N.W.2d at 621 (1990).

Viewing the evidence in the light most favorable to the State establishes that law enforcement located 14 grams of methamphetamine and 50 small baggies in Rein's purse. The methamphetamine was not only in close proximity to her, it was in her own purse. While she claimed to be ignorant of the drug's presence, she provided no explanation of how or why it found its way into her possession. This is enough to support a finding that she was in possession of the methamphetamine.

Every indicator associated with intent to distribute listed in *Zitterkopf* is present in this case. The quantity of methamphetamine that she possessed is four times the amount that Keisel associated with a "big time dealer." The methamphetamine was accompanied with approximately 50 bags which Kiesel attributed to dealing and distribution. The officer also discovered equipment and supplies near the drugs, including, but not limited to, a scale with dried residue and an asp baton. Testimony at trial indicated that the scale was the type a drug dealer would be expected to possess and the asp baton is commonly used as a deadly weapon. Officer Keisel was highly trained in narcotics enforcement, and provided significant testimony in support of Rein's intent to distribute. Taken together, the evidence was sufficient to support a finding of possession of a controlled substance with intent to distribute.

Further, the evidence was sufficient to support the enhancement of the offense for knowingly or intentionally possessing a firearm while in violation of § 28-416(1). See

§ 28-416(16). The evidence, when viewed in the light most favorable to the State, supports a finding that Rein removed a gun from Valles' waistband and stashed the gun between her seat and the center console. Although Rein attempted to provide an alternative explanation, when the evidence is viewed in the light most favorable to the State, we cannot say a reasonable fact finder could not conclude that Rein knowingly or intentionally possessed a firearm while she was in violation of § 28-416(1), supporting the enhancement of her conviction from a Class ID felony to a Class IC felony.

### (b) Carrying Concealed Weapon

"Except as otherwise provided in this section, any person who carries a weapon or weapons concealed on or about his or her person, such as a handgun, a knife, brass or iron knuckles, or any other deadly weapon, commits the offense of carrying a concealed weapon." § 28-1202(1)(a).

Although the State's brief argues that Rein concealed and carried the firearm found in the vehicle, the amended information and jury instructions both alleged that the concealed weapon was the asp baton. Additionally, during closing argument at trial, the State argued the carry a concealed weapon offense related to the asp baton found in the briefcase near the passenger seat where Rein was seated. Accordingly, we examine whether the evidence supports the jury's finding that Rein carried and concealed the asp baton.

Viewing the evidence in the light most favorable to the State, the evidence established that the asp baton was found in a briefcase in the front passenger seat floorboard beneath where Rein had been sitting. This briefcase also contained coins and a digital scale, with residue, both of which Rein admitted she owned. All of these items were near her purse which contained methamphetamine as previously discussed. Although Rein argued the briefcase did not belong to her, we cannot say that a reasonable factfinder could not conclude otherwise.

This leaves only the question of whether the asp baton is a deadly weapon. "Deadly weapon shall mean any . . . device . . . which in the manner it is used or intended to be used is capable of producing death or serious bodily injury." Neb. Rev. Stat. § 28-109(8) (Reissue 2016). "Serious bodily injury" is "bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." § 28-109(21). The evidence at trial established that an asp baton can be used for "joint strikes . . . choke lids (phonetic) . . . comcranial (phonetic) and nerve bundles you are going to hit and you would cause quite a bit of damage." Because an asp baton can be used to inflict bodily injury including causing "quite a bit of damage" to "nerve bundles," the evidence supports the jury's determination that this weapon qualifies as a deadly weapon. As such, the evidence supports Rein's conviction for carrying a concealed weapon.

### (c) Obstructing Peace Officer

Section 28-906, provides, in relevant part:
A person commits the offense of obstructing a peace officer, when, by . . . physical interference . . . she intentionally obstructs, impairs, or hinders (a) the enforcement of the penal law or the preservation of the peace by a peace officer or judge acting under color of his or her official authority . . . .

Viewing the evidence in the light most favorable to the State, Rein reached over to Valles while police officers were trying to remove him from the car, ignored their instructions, and slipped a gun from his waistband. She disobeyed a police officer's lawful orders in order to hide a deadly weapon. This is sufficient to support a conclusion she intentionally interfered with the officers' enforcement of the law.

## 2. EXCESSIVE SENTENCE

Rein claims that the sentences imposed on her Class I misdemeanor convictions were excessive and an abuse of discretion. Class I misdemeanors carry a penalty of up to 1 year in prison, a $1,000 fine, or both. See Neb. Rev. Stat. § 28-106 (Reissue 2016). Her sentences of 0 to 1 year's imprisonment for each misdemeanor conviction are within the statutory sentencing range. Further, it is the minimum portion of an indeterminate sentence which measures its severity. *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991); *State v. Tillman*, 1 Neb. App. 585, 511 N.W.2d 128 (1993).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Stone*, 298 Neb. 53, 902 N.W.2d 197 (2017). When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. See *id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017).

The court noted her fairly minor criminal history, her education that would allow her to work in various fields, her age, her background, and the level of violence involved. The court discussed the serious nature of the crime and the damage it causes to society. He also noted that there was no excuse, no victim who facilitated the crime, and that her attitude toward changing her life was poor. Upon our review of the record and consideration of the relevant sentencing factors in this case, we find the district court did not abuse its discretion in sentencing Rein.

## VI. CONCLUSION

Because we find sufficient evidence to support the jury's verdicts and find no abuse of discretion in her sentences, we affirm.

AFFIRMED.