STATE OF NEBRASKA, APPELLEE, V. MICHELLE P. JENSEN, APPELLANT.

472 N.W.2d 423

Filed July 26, 1991.  No. 90-415.

Thomas M. Kenney, Douglas County Public Defender, and Cheryl M. Kessell for appellant.

Robert M. Spire, Attorney General, and James A. Elworth for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Michelle P. Jensen appeals her district court for Douglas County convictions of (1) possession with intent to manufacture, distribute, deliver, or dispense cocaine and (2) possession of methamphetamine.

On the first count, the defendant was sentenced to not less than 5 nor more than 8 years in prison, and on the second count to not less than 20 months nor more than 5 years, the sentences to run concurrently. We affirm.

Jensen's four assignments of error allege that the trial court erred in (1) failing to grant her motion for a new trial, (2) allowing a witness to testify as to the contents of letters without requiring production of the letters, (3) admitting her statements made while in custody, and (4) finding the evidence sufficient to support her convictions.

Sometime prior to August 4, 1989, the defendant became the focus of a law enforcement narcotics investigation. A search warrant for the home of Kevin Hansen was obtained. At trial, there was testimony that although Hansen was listed on the search warrant, the warrant was directed toward Jensen's activities. It was explained by a police officer that Hansen's name was on the warrant because it was standard practice to list all names of persons residing in the premises to be searched, regardless of whether that person was a suspect in an investigation.

At approximately 10:45 p.m. on August 4, 1989, law enforcement officers executed a search warrant at Hansen's residence at 8019 Northridge Drive. The search was conducted by five members of a multijurisdictional narcotics task force in conjunction with four or five Omaha Police Division officers. The officers entered through a front door and secured four persons, including Jensen. Hansen was not present during the search, and he has never been charged as a result of the search of his residence. The four individuals were held in the living room while the house was searched.

Tilford N. Tucker, a sergeant with the Sarpy County Sheriff's Department who coordinated the task force, testified that even before the search warrant was executed, he knew that Jensen controlled the northwest bedroom in the residence. In the

northwest bedroom, officers found women's clothing and jewelry; more than a dozen pieces of correspondence addressed to Jensen at a different location; a .32-caliber handgun; a triple-beam scale; a knife, razor blade, and plate, all with a white powdery residue on them; and a purse containing drug paraphernalia. A cigarette case containing suspected cocaine was discovered underneath a mattress in that bedroom. Also found in the northwest bedroom were baggies with a white powdery residue in them; a number of bottles containing cutting agents, which can be used to dilute the drug; pipes; spoons; Q-Tips; syringes; an assortment of plastic bags, baggies, and a snuffbox, all of which are commonly used to transport drugs; a small mirror capable of use for nasal ingestion of cocaine and other drugs; rubber tubing which can be employed for intravenous drug use; empty snow seals, which are folded pieces of paper utilized for distributing smaller amounts of narcotics; various items of drug paraphernalia; and a book entitled "The Construction and Operation of Clandestine Drug Laboratories." A glass crack cocaine pipe was seized from a dresser in the northwest bedroom. A test tube and beaker, which are commonly used to manufacture crack cocaine, were also seized from the northwest bedroom.

Later analysis performed by a chemist determined that the cigarette case contained approximately one-half ounce of 100 percent pure cocaine. A number of snow seals taken from the northwest bedroom contained over 22 grams of cocaine, ranging in purity from 40 to 100 percent. The cocaine which was not 100 percent pure had been cut with table sugar or a substance known as "Vitablend." Bottles recovered from the bedroom were found through chemical analysis to contain Vitablend. Residue taken from snow seals, a crack pipe, a syringe, glass pipes, baggies, a knife, a razor blade, a plate, and the triple-beam scale all tested positive for cocaine or crack cocaine. In addition, a vial and plastic bags seized from the northwest bedroom contained over $1^{1}/_{2}$ grams of methamphetamine, as shown by later chemical analysis.

Officer Mark Sundermeier of the Omaha Police Division, an expert in the area of narcotics sales and paraphernalia in Douglas County, assisted in the execution of the search warrant

at 8019 Northridge Drive. With respect to the items seized from the northwest bedroom, Sundermeier testified that the number of packaging materials, the presence of the cutting agents, the triple-beam scale, and the large amount of cocaine were consistent with the sale of controlled substances.

Jensen consented to a search of her purse, wherein officers found $3,332 in six envelopes, with one envelope bearing the term "crank." Methamphetamine in slang language is called crank. The envelope with the word "crank" written on it contained $560. Approximately 10 percent of the money from each envelope was subjected to a gas chromatograph mass spectrograph test. Over objection, a chemist testified that each of the bills which was tested was positive for cocaine. A small amount of marijuana was discovered in Jensen's purse.

In addition to the northwest bedroom, there were two other bedrooms, designated as the southwest and southeast bedrooms. No male clothing was found in the northwest bedroom, but male clothing was discovered in the southeast bedroom. The southeast bedroom contained no female clothing. The remaining, or southwest, bedroom was used for storage.

In addition to the items found in the northwest bedroom, the search of the premises yielded a large bag of marijuana stems and seeds discovered in the southwest bedroom, a tablespoon with a white residue in the southeast bedroom, and various items of drug paraphernalia in the kitchen and southeast bedroom.

On August 23, 1989, an information was filed in the district court for Douglas County, charging Jensen in substance with unlawful possession with intent to distribute cocaine. Jensen was later charged by amended information in the district court with knowingly or intentionally possessing with intent to manufacture, distribute, deliver, or dispense a controlled substance, to wit: cocaine, and with knowingly or intentionally possessing a controlled substance other than marijuana, to wit: methamphetamine.

After a 4-day trial which began on January 19, 1990, a jury found Jensen guilty of both counts alleged in the amended information.

## I. MOTION FOR NEW TRIAL

The jury was impaneled on January 19, 1990. A weekend recess followed. On Monday morning, January 22, Jensen's counsel verbally made a motion in limine to exclude any evidence that traces of cocaine were found on the money taken from the defendant's purse. Defense counsel advised the court that the county attorney had informed him that when the information was initially filed, the money and envelopes would be tested for traces of a controlled substance, that he later understood that a stipulation would be made that there was no controlled substance on the money and envelopes, and that a call was received on the previous Friday that evidence was going to be introduced showing that cocaine was discovered on the currency. At the time the motion was heard, Jensen's attorney had not seen the report concerning the determination that traces of cocaine were found on the money in Jensen's purse.

A deputy Douglas County Attorney, Marie Leslie, testified under oath that when a suppression hearing was first scheduled, she offered to stipulate that no controlled substance was on the money, but that Jensen's attorney insisted on testing the money. At that time, she advised defense counsel that she would have the money tested. The record is silent as to the date of the first scheduled suppression hearing. The deputy county attorney further testified that 4 to 5 weeks prior to trial, defense counsel asked her if she would make the money available to him for testing and that she told him that the money would be available at the property department of the Sarpy County sheriff's office. Members of that office participated in the search and seizure of items at 8019 Northridge Drive. Leslie testified that defense counsel advised her that he would have his expert test the money at the Sarpy County sheriff's office. Jensen's attorney never requested the money for testing. Leslie testified that because she assumed defense counsel would have the money tested, she placed a request on December 28 to have the money tested. The actual test was performed on January 18. Leslie knew on January 18 that the test results were positive, although she did not receive the written report of the test until January 19. As soon as Leslie learned of the results of the test on January 18, she personally informed defense counsel that a

controlled substance was found on the money. Another deputy Douglas County Attorney stated that he read the test results over the telephone to defense counsel's secretary on Friday, January 19.

The court overruled Jensen's motion in limine and granted the defendant leave to have the currency tested. Jensen's attorney did not request a continuance. Defense counsel was provided a recess so that he could telephone an expert in order to have the money tested. As stated, the State at trial introduced, over objection, expert testimony that cocaine was found on the money recovered from Jensen's purse.

On February 8, 1990, Jensen moved for a new trial. In part, in support of the new trial motion was an affidavit wherein an expert witness stated that his office was contacted on January 22, that he needed 10 days to conduct the testing of the money, that one could arbitrarily take currency from the general population and find cocaine residue on the bills, and that law enforcement officers may have contaminated the money through their handling of it. The court overruled the defendant's motion for a new trial.

> A new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following reasons affecting materially his substantial rights . . . (3) accident or surprise which ordinary prudence could not have guarded against . . . (5) newly discovered evidence material for the defendant which he could not with reasonable diligence have discovered and produced at the trial . . . .

Neb. Rev. Stat. § 29-2101 (Reissue 1989). On the basis of subdivisions (3) and (5) of § 29-2101, Jensen contends that because a representation was made that the money was not going to be tested for cocaine residue and because she was not apprised of the analysis performed on the money until the day before the jury was selected, she was unprepared to rebut that evidence. Therefore, she maintains that the trial court should have granted her motion for a new trial.

During the hearing on the motion in limine, the State and Jensen presented two entirely different scenarios regarding the testing of the money. Jensen's attorney, without being placed

under oath, claimed that there was a stipulation to be made that the money did not contain traces of a controlled substance and that it came as a complete surprise to him when he was informed at the eleventh hour that the results of the test on the money would be offered in evidence by the State. In contrast, a deputy county attorney testified under oath that defense counsel refused the stipulation and insisted on testing the money; that at that time, she advised defense counsel that she would have the money tested; that 4 to 5 weeks prior to trial, she told Jensen's attorney that the money would be available for testing at the property department of the Sarpy County sheriff's office; and that defense counsel advised her that he would have his expert test the money onsite at the Sarpy County sheriff's office.

This issue presented a question of fact for the trial court to determine, and it obviously found in favor of the State on that matter. We cannot say that the trial court was clearly in error in finding the State's sworn testimony more credible than defense counsel's unsworn statements. A trial court's determination of the credibility of a statement is a question of fact which will be upheld on appeal unless it is clearly erroneous. *State v. Dixon*, 237 Neb. 630, 467 N.W.2d 397 (1991). Based upon the trial court's factual determination that defense counsel refused to enter into a stipulation, was advised by the county attorney that the money would be tested, and was provided the opportunity several weeks before commencement of the trial to test the money, the test results could not have surprised Jensen. Likewise, the affidavit from Jensen's expert offered with her motion for new trial could not have constituted newly discovered evidence which could not have been produced at trial with reasonable diligence, given the defendant's ample opportunity before trial to have an expert examine the currency. The trial court did not abuse its discretion in overruling Jensen's motion for a new trial. See *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991) (in a criminal case, a new trial motion is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed).

## II. BEST EVIDENCE RULE

Citing the hearsay and the best evidence rules, Jensen made a motion in limine to prevent law enforcement officers from referring to correspondence, including old bills, which was found in a box in the northwest bedroom. The motion in limine was overruled. Sarpy County Deputy Sheriff Gary Lyle testified at trial that the "letters" numbered "[m]ore than a dozen" and were addressed to the defendant. The address on the correspondence was different from that of the premises being searched. None of the correspondence was seized by law enforcement officers, and, consequently, it was never offered in evidence. At trial, Jensen, claiming the State had not established foundation for Lyle to testify about what he observed in the bedroom, objected to any testimony concerning the addresses. The defendant further objected on hearsay grounds. Both objections were overruled.

In this assignment of error, Jensen asserts that because the correspondence was not in evidence, Lyle should not have been allowed to testify to the address on the correspondence. The defendant maintains that Lyle's testimony in regard to the address on the correspondence was prejudicial. Her argument is based upon this state's codification of the best evidence rule, to wit: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required . . . ." Neb. Rev. Stat. § 27-1002 (Reissue 1989).

Jensen overlooks the fact that she failed to object to the evidence at trial on the grounds asserted on appeal.

> When a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence, previously sought to be excluded by the motion, is offered during trial and cannot predicate error on the admission of evidence to which no objection was made when the evidence was adduced. [Citation omitted.]

*State v. Cox*, 231 Neb. 495, 506, 437 N.W.2d 134, 142 (1989). A party is barred from asserting a different ground for his or her objection to the admission of evidence on appeal than was offered before the trier of fact. *Rocek v. Department of Public Institutions*, 225 Neb. 247, 404 N.W.2d 414 (1987). See, also, *State v. Richard*, 228 Neb. 872, 424 N.W.2d 859 (1988)

(relevancy objections made at trial are not adequate to raise a question on appeal of improper impeachment); Neb. Rev. Stat. § 27-103 (Reissue 1989) (specific ground for objection must be made unless it is apparent from the record). Due to Jensen's failure to assert a best evidence ground for her objection at trial, this court does not reach this assignment of error.

## III. CUSTODIAL INTERROGATION

The district court overruled Jensen's motion to suppress any statements made by her after she was placed in the custody of law enforcement officers. Jensen contends that because she was not advised of her rights as guaranteed by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the trial court prejudicially erred in failing to suppress her statements made to a police officer.

The relevant portions of the record reflect the following: After law enforcement officers entered the premises in question, Jensen and the other three individuals were placed prone on the floor in handcuffs. Officer Patricia Gentleman of the Omaha Police Division participated in the search of the house. She testified that she escorted Jensen into a bathroom, removed the handcuffs, and asked if she could search Jensen's person and purse.

Both at the suppression hearing and at trial, Gentleman testified that after Jensen had been taken to the bathroom, Jensen asked if she could have a cigarette to smoke, that Gentleman asked where the cigarettes were, and that Jensen responded that the cigarettes were in *her* bedroom on a stereo or entertainment center. The cigarettes were retrieved from the entertainment center in the northwest bedroom. No objection on the ground of *Miranda* was made at trial to Gentleman's testimony concerning the conversation about Jensen's cigarettes.

Gentleman further testified at the suppression hearing and at trial that she asked Jensen if she resided at the house. Jensen responded that she had been staying at the house in question for a couple of weeks and that she was storing a lot of effects in the home. At both the suppression hearing and trial, the officer characterized her questioning as "basic fact finding." Jensen

objected at trial to Gentleman's testimony for the "same objection." Immediately prior to that objection, the defendant had objected to a prior question on the basis that the question was leading and suggestive. As the county attorney merely asked Gentleman if she had had any further conversation with Jensen, the objection was properly overruled. Gentleman testified at the suppression hearing and at trial that she did not advise Jensen of her *Miranda* rights.

A failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal. *State v. Cogswell*, 237 Neb. 769, 467 N.W.2d 680 (1991). As we stated in part II of this opinion, a party is barred from asserting a different ground for his or her objection to the admission of evidence on appeal than was offered before the trier of fact. Here, Jensen failed to object on *Miranda* grounds at trial with respect to either set of statements made to Gentleman. Thus, we do not reach Jensen's contentions respecting *Miranda*.

## IV. SUFFICIENCY OF THE EVIDENCE

The Nebraska Criminal Code prohibits the knowing or intentional possession with the intent to manufacture, distribute, deliver, or dispense a controlled substance and the knowing or intentional possession of a controlled substance. See Neb. Rev. Stat. § 28-416(1)(a) and (3) (Cum. Supp. 1988). As stated, Jensen was convicted of possession with intent to manufacture, distribute, deliver, or dispense cocaine and possession of methamphetamine. In her final assignment of error, Jensen contends that the evidence was insufficient to support her convictions.

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, the Supreme Court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. *State v. Lohman*, 237 Neb. 503, 466 N.W.2d 534 (1991). Those matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *Id.*

" ' "On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt." ' [Citation omitted.]"

*Cogswell, supra* at 771, 467 N.W.2d at 681-82.

" ' "A defendant may be convicted by circumstantial evidence which establishes the defendant's guilt beyond a reasonable doubt. The State is required to establish the defendant's guilt for the crime charged, but is not required to disprove every hypothesis consistent with the defendant's presumed innocence." ' [Citations omitted.]" *State v. Lonnecker*, 237 Neb. 207, 213, 465 N.W.2d 737, 742 (1991). " 'When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence.' [Citations omitted.]" *Id.*

A defendant possesses a controlled substance when the defendant knows of the nature or character of the substance and its presence and has dominion or control over the substance. [Citations omitted.]

A defendant's control or dominion over premises where a controlled substance is located may establish the defendant's constructive possession of the controlled substance. [Citations omitted.]

*Id.*

Further insight can be gained by examining two situations in which the foregoing rules have been involved. In *State v. Britt*, 200 Neb. 601, 264 N.W.2d 670 (1978), *questioned on other grounds, State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991), this court held that the evidence was sufficient to permit a jury to conclude beyond a reasonable doubt that a defendant was in actual or constructive possession of cocaine which was discovered in his girl friend's house even though he spent two or three nights a week at that residence. On the other hand, mere presence at a place where a controlled substance is found is not sufficient. *State v. Klutts*, 204 Neb. 616, 284 N.W.2d 415

(1979).

As the facts hereinafter show, there is no doubt that there was evidence from which the jury could find beyond a reasonable doubt that methamphetamine was knowingly or intentionally possessed by Jensen and that cocaine was knowingly or intentionally possessed by Jensen with intent to manufacture, distribute, deliver, or dispense. The only substantive issue in this regard is whether the evidence was sufficient to demonstrate beyond a reasonable doubt Jensen's connection to the premises where the narcotics were found. As recalled, a defendant's control or dominion over premises where a controlled substance is located may establish the defendant's constructive possession of the controlled substance.

Sergeant Tucker testified that he was aware prior to the execution of the warrant that the northwest bedroom was the defendant's. Jensen informed Gentleman that the cigarettes were in *her* bedroom on a stereo or entertainment center. The cigarettes were found on the entertainment center in the northwest bedroom, which is where the cocaine and methamphetamine and evidence of cocaine distribution were found. The defendant further informed Gentleman that she had been living in Hansen's residence for a couple of weeks. Female clothing was found only in the northwest bedroom, and male clothing was discovered solely in the southeast bedroom. Correspondence bearing Jensen's name was found in the northwest bedroom. The failure to make a proper objection to the admission of Lyle's testimony regarding the address of the correspondence found in the northwest bedroom may have been a matter of trial strategy. Jensen states in her brief that "[t]he box of letters is consistent with the Defendant's theory of the case that she stored some things at Kevin Hansen's house but did not live there." Brief for appellant at 16. However, the jury could have found that the correspondence was further evidence of a nexus between Jensen and the premises where the drugs were found. While the search of the premises was underway, Jensen received a telephone call at that residence. The defendant was carrying a large amount of cash in six envelopes, with one envelope bearing the term "crank" on it.

When the evidence is viewed in the light most favorable to the State, from the circumstantial evidence outlined above, the jury could find beyond a reasonable doubt that Jensen was residing at the premises and that she, therefore, knowingly or intentionally possessed with intent to manufacture, distribute, deliver, or dispense cocaine and knowingly or intentionally possessed methamphetamine.

At trial, Jensen claimed that she lived elsewhere, that Hansen's girl friend resided in his home, that Jensen was about to use Hansen's shower when the police appeared, that she merely stored items at Hansen's residence, that the money found in her purse was obtained through legal means, that the money found in the envelope with the word "crank" written on it was obtained by selling automotive parts, and that she kept the currency on her person because of her fear of having money in a bank attached by creditors. We reiterate that this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Those questions of fact were for Jensen's jury to resolve, which it did in favor of the State.

The district court's judgment and sentences are affirmed.

AFFIRMED.