STATE OF NEBRASKA, APPELLEE, V.
BRIAN J. ATCHISON, APPELLANT.
730 N.W.2d 115

Filed March 13, 2007.   No. A-06-703.

Dennis R. Keefe, Lancaster County Public Defender, and Christopher Eickholt for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Irwin and Sievers, Judges.

Sievers, Judge.

Brian J. Atchison, after a jury trial in the district court for Lancaster County, was convicted of enticement of a child for sexual purposes through the use of a computer and sentenced to a period of incarceration of 2 to 4 years. Atchison has appealed. We hold that (1) the evidence was sufficient to support his conviction, (2) evidence regarding an investigator's background and training in computer crimes was admissible, (3) evidence concerning the

investigator's explanations of certain phrases and abbreviations in the online typed conversations or "chats" was admissible, (4) the videotape of the events leading up to Atchison's arrest was admissible and not unfairly prejudicial, and (5) the sentence was not excessive.

## I. FACTUAL BACKGROUND

On June 28, 2005, Edward Sexton, an investigator with the Lincoln Police Department, went "undercover" as a 15-year-old girl named "Tami" in an Internet chat room under the assumed "ID" of "tami9005." In order for Investigator Sexton to gain free access to the chat room, he had to create a "profile" with personal information. In the profile that Investigator Sexton created, he identified himself as a 15-year-old female student.

Investigator Sexton entered the chat room on June 28, 2005, and while he was in the chat room, Tami received an instant message from "Fat Lincoln Cock 4 the Ladies," later identified as Atchison, who was approximately 26 years old at the time. The instant message could not be seen by others in the chat room. As further background, we note that the instant messages, as reproduced hereinafter, contain "emoticons," which are symbols such as the well-known smiley faces. When the instant messages are saved and printed, the emoticons are translated as a word that is bracketed by exclamation marks, e.g., !Wink!, !Smug!, !Drooling!, !Blushing!

On June 28, 2005, Atchison sent Tami an instant message. The initial message from Atchison to Tami read as follows, which we quote because it sets the tone for the extremely graphic and sexually charged messages that he later sent (which we do not fully quote), even though Tami had told him she was "barely 15":

> "Tami, 'Sup sweetness? . . . You'll have to be so kind as to please pardon my bluntness and for being so forward, but I twas just wondering if there might be any slight chance of me being able to persuade thee into becoming interested into CUMing" . . . "up to my place for one hell of a great lay today??"

The online chat continued, during which Atchison told Tami that his name was "Brian," that his Web camera was on, and that he was 26 years old. Atchison showed a picture of his

penis to Tami at approximately 1:52 p.m. At approximately 2:04 p.m., Tami informed Atchison that she was "barely 15" and that she could not drive. Atchison asked whether she was from "www.pervertedjustice.com" and explained that such Web site involved a man who pretends to be a young girl to entrap "Perverts" and gets them arrested when they come over to the alleged young girl's house. Tami responded that she was not from that Web site, and Atchison responded, "Kewlz" and "So you're for real, then, 'eh??" Atchison continued to chat with Tami for over 20 minutes after he learned that she was 15 years old, and Atchison asked to come over to her home the next day when her mother would not be home.

On June 29 and July 1, 2, and 6, 2005, Atchison sent some instant messages and emoticons when Tami was online and offline, but Investigator Sexton did not respond. According to Investigator Sexton, whose testimony is detailed below, an offline message is a message that is received by the recipient's computer at a time when the recipient is not signed onto the chat room.

On July 7, 2005, Atchison sent Tami an offline message at 10:04 a.m. that directly and graphically solicited oral and vaginal sex and asked her to get back to him. Tami responded at 10:49 a.m. by writing "oh u would huh," and the online chat continued as follows:

> [Fat Lincoln Cock 4 the Ladies]: Oh Yeah !Devil!
> [Tami]: lol
> [Tami]: u gonna pick me up?
> [Fat Lincoln Cock 4 the Ladies]: Sure. Where at??
> [Tami]: u kno I cant drive
> [Fat Lincoln Cock 4 the Ladies]: I know.
> [Fat Lincoln Cock 4 the Ladies]: I got the car today !Wink!
> [Tami]: lol...
> [Tami]: u musta been readin my mind
> [Tami]: got up in the mood
> [Tami]: lol
> [Fat Lincoln Cock 4 the Ladies]: Aye !Smug! I try !Wink!
> [Fat Lincoln Cock 4 the Ladies]: Sweet !Wink!
> [Fat Lincoln Cock 4 the Ladies]: I aim to please !Wink!

[Tami]: lol

[Tami]: ok...guess we'll see

[Fat Lincoln Cock 4 the Ladies]: Yep.

[Tami]: i'm kinna in the area of 13 & van dorn

[Fat Lincoln Cock 4 the Ladies]: Is your mother not home?? !Wink!

[Tami]: nope

[Fat Lincoln Cock 4 the Ladies]: Sweet

[Tami]: but u aint commin here

[Fat Lincoln Cock 4 the Ladies]: 13th & Van Dorn??

[Fat Lincoln Cock 4 the Ladies]: Well I gotta cum pick you up somewhere, right?? !Smug!

[Tami]: ya

[Tami]: sorry...but i dont want u to know where i live yet

[Tami]: u unnerstand

[Fat Lincoln Cock 4 the Ladies]: Totally !Batting Eyelashes!

[Tami]: k

[Fat Lincoln Cock 4 the Ladies]: But I'll need a location to cum pick you up from....

The online chat continued until immediately before noon. While we do not repeat the entire chat here, we note that Atchison wrote that he was "ALWAYS Horny" and that he was "hoping that maybe you'd be feeling kinda frisky your own self." Later in the same chat, Tami asked, "u gots protection?" and Atchison responded, "Nope !Smug!" and explained that he was sterile as well as free from sexually transmitted diseases.

During the chat, Atchison and Tami agreed to meet at 12:30 p.m. in the "park lot" of "Vandorn Park" and then go to Atchison's home. Atchison described his car as a "2004 Yellow Dodge Neon" and said that he would wear his "presciption glasses," which Tami previously viewed by means of Atchison's Web camera and referred to as his "fancy sunglasses." Tami wrote that she would wear a black baseball hat. After Tami wrote that "i gotta go get ready..." at 11:18 a.m., Atchison wrote a final sexual comment leaving no doubt about his intentions and desires. Investigator Sexton, posing as Tami, sent his final instant message at 11:55 a.m., which message read: "shuttin off puter now."

Atchison continued to send instant messages, including the last message, which read: "Well I hope that I shall see you in a lil' bit !Batting Eyelashes!"

At approximately noon on July 7, 2005, Officer Tracy Graham was contacted by Investigator Sexton. Officer Graham is approximately 5 feet 4 inches tall and weighs 115 pounds, and she was asked to dress in a black baseball hat, a baggy T-shirt, jean shorts, and flip-flops. Officer Graham was told that she was supposed to be a 15-year-old girl even though she was 29 years old at that time. Officer Graham was shown the online picture of Atchison wearing his prescription sunglasses. Officer Graham met Atchison at the agreed-upon park. Investigator Sexton was also present along with other Lincoln police officers. Officer Graham wore a "wire" concealed in the baseball hat. Atchison made contact with Officer Graham posing as Tami and was arrested. The record contains a videotape of the meeting leading to the arrest.

## II. PROCEDURAL BACKGROUND

An information was filed in the Lancaster County District Court on August 12, 2005, alleging that on or about July 7, Atchison

> did knowingly solicit, coax, entice, or lure a peace officer who is believed by such person to be a child sixteen (16) years of age or younger, by means of a computer as that term is defined in § 28-1343, to engage in an act which would be in violation of § 28-319 or § 28.320.01 or subsection (1) or (2) of §28-320.

At Atchison's arraignment on August 17, Atchison pled not guilty.

On April 10 through 12, 2006, the jury trial was held. Investigator Sexton testified to his training in computer and electronic crimes and then explained how in June 2005, he prepared a profile for a 15-year-old girl with an online identification of "tami9005." According to Investigator Sexton, he created the profile in order to "chat" in the chat rooms. On June 28, a user "ID" with the name of "Fat Lincoln Cock 4 the Ladies" sent an instant message to Tami, which could not be seen by anyone else in the chat room. Investigator Sexton stated that he could not save the initial message but that he printed it out. (We included

the initial message in its verbatim form in the previous section.) Investigator Sexton testified that he, as Tami, chatted for about an hour on June 28 in a one-on-one online chat with "Fat Lincoln Cock 4 the Ladies," who identified himself as "Brian."

At trial, Investigator Sexton explained that through software he installed on his computer, he could save and print the instant messages or "chats" into "DAT files," which were initially encrypted. Investigator Sexton testified that he had additional software which would decode the files but that he was not able to change what was in the DAT files. While the State introduced the decoded verbatim printouts of the online chats at trial, which printouts the district court received into evidence and allowed to be published to the jury, Investigator Sexton did not read the verbatim transcript of the chats aloud at trial. Rather, the jury read the transcript as displayed on a monitor in the courtroom and Investigator Sexton explained the meaning of certain words and abbreviations that are apparently commonly used in online chats. For example, according to Investigator Sexton, "UR" means "you are," "IDN" means "I don't know," and "lol" means "laugh out loud" or "lots of laughs." Investigator Sexton also explained that the verbatim printouts contain a record of the time (down to the second) of when an instant message is sent.

Investigator Sexton further testified that Atchison sent Tami messages or emoticons on June 29 and July 1, 2, and 6, 2005. Investigator Sexton stated that on July 7, he entered into an online chat with Atchison, after which Atchison drove to a park where he met Officer Graham, who posed as "Tami," and they arrested Atchison.

Officer Graham also testified at the trial, and she stated that Investigator Sexton contacted her to pose as a 15-year-old girl named "Tami" dressed as we earlier recounted. Officer Graham said that she viewed a picture of Atchison from his online exchange. Officer Graham related that Investigator Sexton drove her to the agreed-upon area of "17th and Otoe," where she walked northbound on "17th Street, 'til [she] got to Van Dorn." According to Officer Graham, she turned eastbound on Van Dorn Street and a man yelled "Tami" from across the street. Officer Graham testified that she asked if he was Brian, that Atchison indicated he was, and that she crossed the street toward him. Then Officer Graham

walked with Atchison, and she asked whether that was his "'vehicle over there'" and were they "'going to [his] car.'" According to Officer Graham, Atchison responded affirmatively to both questions. At trial, Officer Graham identified Atchison as the person who yelled out "Tami" and who had met her at the park.

In Atchison's trial testimony, he did not dispute that he was the one identified as "Fat Lincoln Cock 4 the Ladies" who chatted online with Tami beginning in June 2005 and he admitted that the printouts of the online chats which Investigator Sexton saved and printed were accurate. Atchison testified that he was disabled because of an accident that occurred in 1993 and that he moved to Lincoln with his wife in the spring of 2005. Atchison stated that he never looked at Tami's profile and that when he chatted with Tami on July 7, he did not remember that she was 15 years old. Atchison admitted that he was convicted of a felony in the last 10 years.

On April 12, 2006, the jury found Atchison guilty of "enticement of a child for sexual purposes through the use of a computer." On June 1, the district court sentenced Atchison to 2 to 4 years' imprisonment. Atchison now appeals.

### III. ASSIGNMENTS OF ERROR

Atchison alleges, restated and reordered, that the district court erred by (1) finding that the evidence was sufficient to support the jury's verdict that he was guilty of enticement of a child for sexual purposes through the use of a computer; (2) admitting into evidence (a) Investigator Sexton's testimony regarding his background and training in computer crimes, (b) Investigator Sexton's comments concerning the online chats, and (c) over Atchison's objections, the videotape recording of Atchison meeting Officer Graham; and (3) imposing an excessive sentence.

### IV. STANDARD OF REVIEW

We set forth the appropriate standards of review in the individual sections of our analysis.

### V. ANALYSIS

#### 1. INSUFFICIENT EVIDENCE FOR GUILTY VERDICT

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for

an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Aldaco*, 271 Neb. 160, 710 N.W.2d 101 (2006).

Atchison argues that there was insufficient evidence to support the jury's verdict that he was guilty of enticement of a child through the use of a computer. Atchison alleges that on July 7, 2005, he had forgotten Tami said during the June 28 chat she was 15 years old and that this possibility of not remembering was evidenced by the two messages he sent to "Tami" after he was "interviewed and lodged in jail." Brief for appellant at 19. Atchison argues that he is a "disabled man with interpersonal difficulties" who is lonely and that "[p]erhaps he is too focused on sexy chat while online" but that such "does not rise to the level of him seeking to entice children over the Internet." *Id.*

▮ Neb. Rev. Stat. § 28-320.02 (Cum. Supp. 2004) provides that a person is guilty of a Class IIIA felony where a person

knowingly solicit[s], coax[es], entice[s], or lure[s] (a) a child sixteen years of age or younger or (b) a peace officer who is believed by such person to be a child sixteen years of age or younger, by means of a computer as that term is defined in section 28-1343, to engage in [a sexual] act which would be in violation of section 28-319 or 28-320.01 or subsection (1) or (2) of section 28-320.

▮ Viewing the evidence at trial most favorably to the prosecution, as we must, see *State v. Lewis*, 241 Neb. 334, 488 N.W.2d 518 (1992), the following facts are clearly established: Atchison learned that Tami was barely 15 years old during his online chat with Investigator Sexton on June 28, 2005. After Atchison had knowledge that Tami was 15 years old, he proceeded to chat with Tami and asked Tami if he could come over to her home the next day when her mother was not home.

After the June 28, 2005, online chat, Atchison sent Tami instant messages and emoticons (some offline) on four separate days. Then on July 7, Atchison sent Tami an instant offline message at 10:04 a.m. that solicited oral and vaginal sex with Tami. Investigator Sexton, posing as Tami, wrote back at 10:49 a.m.; seconds later, Atchison acknowledged knowing that

Tami could not drive, and less than 2 minutes later, Atchison was asking if Tami's mother was home, to which Tami responded that she was not. During the July 7 online chat, Atchison asked whether the person conversing with him online was Tami, and Tami responded affirmatively. Tami then asked what Atchison's name was, and Atchison responded, "Brian." During the online chat that lasted from 10:49 a.m. until immediately before noon, Atchison wrote that he was "ALWAYS Horny," that he was hoping Tami was "feeling kinda frisky," that he did not have protection, that he was sterile, that he did not have any sexually transmitted diseases, and that he could not wait to perform oral sex on her. Atchison and Tami agreed to meet at 12:30 p.m. Atchison described his car as a "2004 Yellow Dodge Neon" and said that he would be wearing his prescription sunglasses. Tami said that she would be wearing a black baseball hat and that she was "5-5" and "125" pounds.

After finishing the online chat, Atchison drove in a yellow car to the agreed-upon location. Atchison got out of his yellow car. Atchison yelled "Tami" to Officer Graham, who was across the street from him and wearing a black baseball hat. Atchison indicated that he was "Brian." Officer Graham crossed the street, and Atchison and Officer Graham proceeded to walk together toward the yellow car.

During the search of Atchison's residence, the police officers located a computer as well as a Web camera, and the computer's hard drive contained portions of Atchison and Tami's online chats from June 28 and July 7, 2005. At trial, Atchison admitted to chatting online with Tami and that the printouts of the chats were accurate.

After a careful review of the evidence, we find that the jury could in fact find Atchison guilty beyond a reasonable doubt of enticement of a child for sexual purposes through the use of a computer. The evidence was such that the jury could easily reject the defense that he had forgotten that Tami was 15 years old. Accordingly, we find no merit to this assignment of error.

### 2. EVIDENTIARY OBJECTIONS

#### (a) Standard of Review

Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the

admissibility of evidence is reviewed for an abuse of discretion. *State v. Grosshans*, 270 Neb. 660, 707 N.W.2d 405 (2005). The exercise of judicial discretion is implicit in determinations of relevancy under Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995), and prejudice under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), and a trial court's decision regarding them will not be reversed absent an abuse of discretion. *State v. Gutierrez*, 272 Neb. 995, 726 N.W.2d 542 (2007).

(b) Investigator Sexton's Background in Computers

Atchison alleges that the district court's allowance of testimony concerning Investigator Sexton's training in computers, computer crime forensics, and white-collar crime was "not relevant" to his "participation in the investigation of this case and had the effect of implying, if not establishing that Investigator Sexton is some sort of expert in the field of computers." Brief for appellant at 13-14. Atchison argues that an implication that Investigator Sexton is an expert in the field of computers is "unfairly prejudicial" to Atchison. *Id.* at 14. Atchison further argues that Investigator Sexton was not an expert, that his training was not relevant to "what happened . . . in June or July of 2005," and that the jury was "given the unfounded impression" that because of Investigator Sexton's training, "the charge had inherent merit solely because he worked the case." *Id.*

The record reflects that Investigator Sexton testified that in 1996, he received his first training in investigating crime on the Internet, and that he has continued to receive training in computer crimes, data recovery, and undercover work posing as a child on the Internet, as well as searching hard drives and investigating Internet crimes against children. While Atchison objected on numerous occasions to such testimony on relevancy grounds, all of which were overruled, Atchison did not object on any other ground.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." § 27-401. Given our standard of review and given that "[j]udicial abuse of discretion means that the reasons or rulings of the trial court are clearly untenable," *State v. Jacob*, 253 Neb. 950, 971, 574 N.W.2d 117, 135 (1998),

we find that the district court did not abuse its discretion in allowing testimony about Investigator Sexton's background and training in computer crimes when the crime charged required the use of a computer and the evidence necessitated an understanding of computer files, data recovery, and online chat rooms, as well as instant messaging.

█ Although Atchison argues in his brief that admittance of Investigator Sexton's testimony regarding his background and training in computer crimes was unfairly prejudicial, such objection was not made before the district court. See *State v. Jensen,* 238 Neb. 801, 472 N.W.2d 423 (1991) (party is barred from asserting different ground for his or her objection to admission of evidence on appeal than was offered before trier of fact). Therefore, we address the claim of unfair prejudice no further. This assignment of error is without merit.

### (c) Investigator Sexton's Comments on Contents of Verbatim Printouts of Online Chats

The record reflects, and Atchison admits in his brief, that he did not object either to the admission of the exhibits containing the verbatim printouts of the chats on June 28 and July 7, 2005, or to their publication to the jury. Atchison contends that he "made an ongoing relevance objection to the [S]tate questioning Investigator Sexton regarding the content or meaning of selected portions of the chat text in the exhibits as they were being published to the jury." Brief for appellant at 15. However, the record does not support this contention.

The record reflects that in a bench conference, Atchison's counsel stated that "I don't want [Investigator Sexton] putting undue influence or emphasis on certain parts" of the verbatim printout of the June 28, 2005, chat. The district judge decided that Investigator Sexton could not read the transcript line by line. Rather, the district court decided that the transcript would be put on the courtroom monitor and the jury would be allowed to read it line by line and that the State would be allowed to ask specific questions about the meaning of certain abbreviations, phrases, and the time records of the chat, to which questions Atchison could make specific objections. After the bench conference, Atchison objected to having the document published to the jury. There was another bench conference, and Atchison's counsel agreed that

the jury would read the verbatim printout of the chat and that he would object to any specific questions the State made. Atchison's counsel then stated: "Yeah, so anything that [the State] asks [Investigator Sexton] to clarify, just note my objection. I won't raise individual ones as we go along." Atchison's counsel stated that because the printouts are being published, the jury could read it for themselves, and "[i]f they don't understand something, they don't understand something." The district court overruled Atchison's objection. When the State offered the exhibit containing the verbatim printout of the July 7 chat, Atchison's counsel took the same position as with the exhibit containing the verbatim printout of the June 28 chat, but did not elaborate any further. The record reflects that the exhibits of the verbatim printouts of the chats were not sent to the jury room during deliberations.

■ The duty rests on the defendant to object at trial to the admission of evidence and to state the specific ground of the objection if the specific ground is not apparent from the context in which the objection was made. See *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992). In this case, Atchison's counsel noted his objection to any question that the State would ask pertaining to the verbatim printouts of the online chats, and it appears that he was granted a continuing objection of sorts. However, whatever evidentiary grounds Atchison was relying on to support his objection were not clearly stated.

Nevertheless, the record suggests that the basis was probably that each printout "speaks for itself." But, the fact is that portions of the printouts required explanation for those unfamiliar with online chats, and Investigator Sexton was clearly qualified to provide those explanations. Thus, the implied grounds for the objection were, in any event, without merit.

### (d) Videotape of Contact With Officer Graham

Atchison objected to the videotape of the meeting between Atchison and Officer Graham and his subsequent arrest on the grounds that the videotape was not relevant, was cumulative, and was prejudicial. The district court overruled the objection in part and sustained it in part. The district court received the videotape with the restriction that only the meeting and not the subsequent arrest would be shown to the jury. The district court did not allow the jury to review the videotape during deliberation.

The videotape of the meeting with Officer Graham posing as Tami shows Atchison's intent to connect with the 15-year-old girl whom he believed he had chatted with online earlier in the same day and to whom he had written sexually explicit messages, as we have set forth previously. In addition to the videotape demonstrating Atchison's intent to connect with a 15-year-old girl for sexual purposes, the videotape provided visual corroboration of the online chat wherein Atchison told "Tami" that he would be driving a yellow car and "Tami" told Atchison that she would be wearing a black baseball hat. Thus, the videotape establishes that Atchison's calling out to and walking with Tami was no accident. The district court did not abuse its discretion in finding that the videotape was relevant to the case.

Moreover, while the evidence may well have been prejudicial to Atchison's defense, it cannot be said that it was unfairly so. For purposes of the balancing test required by rule 403, "unfair prejudice" means an undue tendency to suggest a decision on an improper basis. See, *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997); *State v. Eona*, 248 Neb. 318, 534 N.W.2d 323 (1995). We find that the videotape did not unfairly prejudice Atchison, because whether Atchison intended to meet with a 15-year-old girl for sexual purposes was a matter for the jury to consider, and the videotape certainly bears on that issue.

With respect to the argument that the videotape was cumulative, the admission of cumulative evidence rests within the discretion of the trial judge. See *State v. Jackson*, 200 Neb. 827, 265 N.W.2d 850 (1978). Whether cumulative evidence constitutes reversible error depends upon the facts and circumstances of each case. See *id.* While the police officers testified to Atchison's meeting with Officer Graham, the videotape of the meeting was not prejudicially cumulative. Atchison's argument is really that the State introduced "too much" evidence of his crime, which argument we reject.

### 3. EXCESSIVE SENTENCE

Atchison assigns as error that the sentence imposed by the district court was excessive. A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Losinger*, 268 Neb. 660, 686 N.W.2d 582 (2004). An abuse of discretion occurs when a

sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result. *Id.* In considering a sentence to be imposed, the sentencing court is not limited in its discretion to any mathematically applied set of factors. *State v. Griffin*, 270 Neb. 578, 705 N.W.2d 51 (2005). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Here, the district court sentenced Atchison to incarceration of 2 to 4 years. Class IIIA felonies are punishable by up to 5 years' imprisonment, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2006). Atchison's sentence is within the statutory limits.

However, Atchison argues that the district court did not give proper weight and consideration to the factors set forth in *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001) (in imposing sentence, sentencing judge should consider defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for offense, nature of offense, and amount of violence involved in commission of crime). In particular, Atchison argues that the district court did not give proper consideration to his serious motorcycle accident and his resulting disabling injury, which caused him to become "'distant'" from his family. Brief for appellant at 22. On the contrary, the record demonstrates that the district court specifically considered Atchison's accident and head trauma, as well as the fact that "according to a 2000 psychological evaluation," the head trauma "exacerbated a history of conduct and personality disorders." The district court noted that the 2000 psychological evaluation described Atchison as "oriented in all dimensions." The district court considered additional factors, including the type of crime, the fact that the judge believed that Atchison thought he had done nothing wrong, and the fact that Atchison had had no contact with law enforcement since 1997, when he was convicted of a felony relating to damage of property. The district court also credited Atchison for 224 days served. Therefore, we find that the district court did not abuse its discretion.

## VI. CONCLUSION

We conclude that the jury could in fact find Atchison guilty beyond a reasonable doubt of enticement of a child for sexual purposes through the use of a computer. We further find no merit to Atchison's evidentiary assignments of error or his allegation that his sentence was excessive.

AFFIRMED.

INBODY, Chief Judge, participating on briefs.