IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SALDIVAR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHAURICE SALDIVAR, APPELLANT.

Filed January 9, 2018.    No. A-16-1231.

Appeal from the District Court for Scotts Bluff County: LEO DOBROVOLNY, Judge. Affirmed.

Leonard G. Tabor for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Shaurice Saldivar appeals from her conviction in the district court of Scotts Bluff County for possession of a controlled substance, cocaine. Because we find sufficient evidence of constructive possession by Saldivar, we affirm.

### BACKGROUND

On April 6, 2016, the State filed an information in the district court, charging Saldivar with minor in possession of alcohol, 19 or 20 years of age, in violation of Neb. Rev. Stat. § 53-180.02 (Reissue 2010), a Class III misdemeanor, and possession of a controlled substance, cocaine, in violation of Neb. Rev. Stat. § 28-416(3) (Supp. 2015), a Class IV felony.

A jury trial was held on October 3, 2016. The State presented testimony from three members of the Scotts Bluff Police Department and Saldivar's boyfriend. At the close of the State's

case, Saldivar made a motion for a directed verdict, which was sustained by the district court as to the minor in possession count since the evidence showed that any alcohol was consumed at her permanent place of residence. Saldivar presented further testimony from her boyfriend and also testified on her own behalf. The court then denied Saldivar's renewed motion for directed verdict with respect to the possession of cocaine charge.

The evidence shows that in the early morning hours of March 27, 2016, police responded to a reported fight outside of a residence in Scotts Bluff, Nebraska. When they arrived, they observed approximately five people outside running to the back door of the residence. Officer Corey Fuller told the people to stop, and two of them, subsequently identified as Saldivar and her boyfriend, did so. Saldivar and her boyfriend rented the residence together and were the only individuals who lived there.

Initially, Saldivar and her boyfriend were in the backyard, while the police were standing about four feet away from them in a driveway, separated from the couple by a chain-link fence. When Fuller started speaking to the couple, Saldivar began getting angry and saying the police did not have a reason to be there. Fuller could smell alcohol emitting from Saldivar and she was slurring her words.

During the encounter, police discovered an active warrant for the arrest of Saldivar's boyfriend, who was standing in the backyard next to Saldivar and holding a can of beer. When the police informed the boyfriend that he was going to be arrested, he took a sip of beer and handed the can to Saldivar. Fuller instructed the boyfriend to leave the yard and proceed to the driveway, which he did. Saldivar continued to insist that the officers had no reason to be there and should leave.

When the boyfriend was handing the beer can to Saldivar, Patrol Sergeant Lee Pinet observed something fall "from behind the can" to the ground. At that point, Pinet was "just across the fenceline" from Saldivar. As the object landed, Pinet observed that it was a small plastic baggie with something white in it. Pinet suspected the baggie contained drugs and shined his flashlight on it to get a better view. After doing so, he felt certain the baggie contained drugs. Pinet then entered the backyard through a gate in the fence, and Saldivar stepped forward as if to stop him and began yelling at Pinet to get out of the yard and that he could not do what he was doing. Saldivar did not make any statements about the baggie's contents. Pinet had the third officer secure Saldivar while he retrieved the baggie, the contents of which tested positive for cocaine.

Pinet testified that cocaine is a stimulant, which tends to raise people's pulse rates and make them more animated and potentially agitated or aggressive "from a police viewpoint." Pinet testified that Saldivar was animated, agitated, and argumentative during the encounter and that her boyfriend "was pretty much the same way." He agreed that he had seen people under the influence of alcohol behave similarly to Saldivar.

Saldivar's boyfriend testified that he and Saldivar were having a party to celebrate Saldivar's 20th birthday when a group of people "busted in [their] windows and door," which was why he thought the police arrived. There were approximately five to seven people at the party. He admitted that he and Saldivar were drinking at the party, but he denied using cocaine. Based upon the events in question, Saldivar's boyfriend was charged with and pled guilty to possession of cocaine. However, he testified that the cocaine was "somebody's at the house whenever all that

went down." According to Saldivar's boyfriend, he picked the baggie up outside by the back door just a few minutes before the police arrived. He testified that he did not know exactly what was in the baggie but suspected it was probably some kind of controlled substance. He testified that he did not make any statements when he found the baggie and did not tell anyone about it. He did not believe Saldivar saw him pick it up. Saldivar's boyfriend testified that he did not say anything to her when he handed her the beer, and he did not remember her saying anything to him.

Saldivar testified she did not remember exactly how much beer she had to drink that night, but she agreed that it was "more than a few" drinks and that she was "somewhat intoxicated." She denied that either she or her boyfriend used cocaine that night. She described the encounter with the individuals who broke in the window and door to the residence. She stated that the police arrived four or five minutes after these individuals "started taking off," stating that there were a few of the individuals "still down the street" who "kind of just scattered off" when the police arrived. She estimated that only two or three partygoers besides herself and her boyfriend went outside for this encounter. Saldivar was "really upset" because she knew her landlord would be upset about the damage to the residence. She was also mad because the police were there. She testified that she was "just trying to get them to go" because there had not been a fight and the party had not been noisy. Saldivar denied knowing that her boyfriend found a baggie on the lawn. She testified further that she did not see anything fall from behind the beer can and that she had no idea anything was there until an officer pointed his flashlight at it. Saldivar testified that she did not bend down to pick the baggie up, did not put her foot over the baggie, and never touched it. She testified that when the officer picked it up, she had no idea what it was. Saldivar agreed that she and her boyfriend were next to each other from when they had the encounter with the individuals who broke into the residence until they were arrested, although she thought she put their dog back in the house at some point.

The jury found Saldivar guilty of possession of cocaine, and the district court accepted the verdict. The court subsequently sentenced Saldivar to probation.

ASSIGNMENTS OF ERROR

Saldivar asserts, consolidated and restated, that the evidence was insufficient to support a conviction beyond a reasonable doubt.

STANDARD OF REVIEW

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Jones*, 296 Neb. 494, 894 N.W.2d 303 (2017). Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed

most favorably to the State, is sufficient to support the conviction. *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).

## ANALYSIS

Saldivar asserts that the evidence was insufficient to support her conviction for possession of cocaine. Section 28-416(3) provides in relevant part:

> A person knowingly or intentionally possessing a controlled substance, except marijuana or any substance containing a quantifiable amount of the substances, chemicals, or compounds described, defined, or delineated in subdivision (c)(25) of Schedule I of section 28-405, unless such substance was obtained directly or pursuant to a medical order issued by a practitioner authorized to prescribe while acting in the course of his or her professional practice, or except as otherwise authorized by the act, shall be guilty of a Class IV felony.

A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence. *Id.*

A defendant's control or dominion over premises where a controlled substance is located may establish the defendant's constructive possession of the controlled substance. *State v. Jensen*, 238 Neb. 801, 472 N.W.2d 423 (1991). However, mere presence at a place where a controlled substance is found is not sufficient to show constructive possession. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Instead, the evidence must show facts and circumstances which affirmatively link the defendant to the controlled substance so as to suggest that the defendant knew of it and exercised control over it. See *id.*

In this case, Saldivar was not in actual possession of the cocaine, so the question is whether there is sufficient evidence from which a trier of fact could reasonably infer she was in constructive possession of it. In other words, could the trier of fact reasonably infer she was aware of the cocaine's presence and had dominion or control over it? Under the circumstances of this case, we conclude that there was sufficient evidence for the jury to infer that Saldivar was aware of the presence of the baggie of cocaine and had dominion or control over.

The baggie of cocaine was found in the yard of the home that Saldivar lived in with her boyfriend. At the time of the encounter with the police officers, only Saldivar and her boyfriend were in the yard, standing next to one another. Clearly, Saldivar had control or dominion over the premises where the baggie was ultimately found. The baggie of cocaine fell to the ground as Saldivar's boyfriend passed a can of beer to her. This action suggests that the boyfriend was attempting to pass the baggie to Saldivar. There is no evidence that Saldivar was aware of the existence of the baggie, or had been in possession of the baggie, prior to it falling to the ground. Further, there is no evidence that Saldivar attempted to pick up the baggie after it fell to the ground. However, when Pinet shined his flashlight on the baggie, Saldivar admittedly saw the baggie and thereafter, she stepped forward as if to stop Pinet from entering the backyard and yelled at him to leave. It is at this point that Saldivar's actions can be inferred to be an exercise of dominion and control over the baggie of cocaine located in the yard of her residence. See *State v. Lonnecker*, 237

Neb. 207, 465 N.W.2d 737 (1991) (defendant's actions during execution of search warrant was evidence of conscious guilt concerning presence of drugs on premises which were under his control).

We recognize that the facts of this case differ from those in which drivers or passengers are found to be in constructive possession of controlled substances located within a vehicle. See, *State v. Rocha, supra*; *State v. Howard, supra*; *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). Rather, this case is more akin to those in which controlled substances are found inside a residence over which the defendant has dominion or control. See, *State v. Jensen, supra*; *State v. Lonnecker, supra*; *State v. Britt*, 200 Neb. 601, 264 N.W.2d 670 (1978), *questioned on other grounds, State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991). In these cases, the evidence was found sufficient to show actual or constructive possession of controlled substances where the defendant either lived or spent time at the residence. On the other hand, in *State v. Klutts*, 204 Neb. 616, 284 N.W.2d 415 (1979), the evidence was held insufficient to establish the defendant's control of the residence where the controlled substances were found when the only evidence of his connection with the residence was a police officer's hearsay statement that the city directory identified it as the defendant's.

Here, when the evidence is viewed in the light most favorable to the State, from the circumstantial evidence outlined above, a reasonable inference is that Saldivar, who clearly lived at the residence, knew of the presence of the baggie of cocaine in the yard of her residence and that she exercised control over it.

CONCLUSION

The evidence was sufficient to support Saldivar's conviction.

AFFIRMED.